Joseph **EDELSON** and Harriet Edelson,
Petitioners-Appellants,

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.**

No. 86–7549.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted August 4, 1987.

Decided Oct. 2, 1987.

Sherri A. Groveman, La Jolla, Cal., for petitioners-appellants.

John A. Dudeck, Jr., Washington, D.C., for respondent-appellee.

Before WIGGINS, KOZINSKI and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

Joseph Edelson and his wife Harriet Edelson appeal the tax court's decision dismissing their petitions for federal income tax redetermination, upholding the Commissioner's issuance of deficiencies and additions to tax against Joseph for fraud, and finding Harriet liable for a portion of Joseph's taxes as a transferee. We affirm.

## FACTS AND PROCEEDINGS BELOW

The Edelsons filed joint returns before 1975, but filed separately thereafter. Joseph filed separate federal income tax re-

turns for 1975, 1976, and 1977 in which he reported income as "less than $10" annually calculated in "constitutional dollars of silver and/or gold." Joseph submitted with his returns numerous constitutional objections to the forms' questions. After the Internal Revenue Service ("IRS") informed Joseph his returns were invalid, Joseph filed amended returns, but still provided no income information and repeated his constitutional objections.

On January 22, 1979 Joseph, appearing *pro se*, was convicted in the United States District Court for the District of New Jersey under Internal Revenue Code § 7203[1] for willful failure to file income tax returns for 1975–1977. His conviction was affirmed in *United States v. Edelson*, 604 F.2d 232, 236 (3d Cir.1979).

The case before this court relates, not to any criminal matter, but only to the determination of tax liability for 1975–1977. Joseph refused to cooperate with the IRS in ascertaining his tax liability. He refused to answer questions after an IRS agent investigating Joseph's case declined to respond to a personal questionnaire tendered by Joseph. At a later meeting, Joseph refused to cooperate on fifth amendment grounds. Moreover, the IRS was forced to subpoena third parties in order to obtain information about Joseph's income, after Joseph had threatened the third parties with lawsuits if they cooperated with the IRS. The record also indicates that Joseph sponsored a tax revolt seminar in New Jersey, advising people "how to not pay taxes." In affirming his conviction on the criminal charges, the Third Circuit described Joseph as typical of "an increasing, if not small, number of our citizens [who] have placed themselves in open defiance of the Internal Revenue Code justifying their positions on a variety of legal theories that have, for the most part, been rejected by the courts." *Edelson*, 604 F.2d at 233.

The IRS reconstructed Joseph's income through bank deposits, closing records, and canceled checks, and on April 2, 1982 the Commissioner asserted the following deficiencies for the 1975–1977 tax years:

| Year | Tax Deficiency | § 6653(b) (Fraud) | Penalty Additions to Tax § 6654 (Estimated Tax) | Total |
|---|---|---|---|---|
| 1975 | $ 35,665 | $17,833 | $1,497 | $ 54,995 |
| 1976 | 62,837 | 31,419 | 2,340 | 96,596 |
| 1977 | 73,019 | 36,510 | 2,601 | 112,130 |
| Totals | $171,521 | $85,762 | $6,438 | $263,721 |

The total amount of the deficiencies, including penalties and interest, appears to exceed Joseph's gross income for the years at issue.[2]

During its investigation, the IRS discovered that Joseph had conveyed to Harriet his one-half interest in properties valued at $149,500 for consideration of $200 just weeks before filing his 1975 returns. Consequently, the Commissioner asserted a deficiency against Harriet holding her liable for Joseph's taxes as a transferee under I.R.C. § 6901(a) in the amount of $74,550 plus interest.

On June 2, 1982 the Edelsons, proceeding *pro se*, brought this case, petitioning the tax court for redetermination of the deficiencies and requesting that trial be held in San Francisco, California. After trial was set for San Francisco, the Edelsons were granted a motion to move the trial to San Diego. On August 23, 1983, representing that they had moved back to New Jersey, the Edelsons moved for and received a continuance. The tax court denied another

---

**1.** Since all events relevant to establishing appellants' tax liability occurred prior to January 1, 1986, any reference to the Internal Revenue Code refers to the Internal Revenue Code of 1954 ("I.R.C."). 26 U.S.C. § 1 *et seq.*

**2.** Gross income for 1975, 1976, and 1977 was computed to be $72,441, $109,818, and $125,578, respectively, for a total of $307,837. While interest was not calculated, it can safely be concluded that it exceeds the difference between the assessment and gross income as of the date of the tax court decision.

motion for a continuance on August 7, 1984. Alleging they could not return to San Diego, the Edelsons on October 1, 1984 moved for and received a change of trial to Newark, New Jersey. On April 18, 1985 the Edelsons filed, but were denied, a motion to move the trial back to San Diego.

On May 22 and 24, 1985 the Commissioner subpoenaed both Joseph and Harriet to appear at the trial session in Newark, New Jersey and to bring their records. Neither the Edelsons nor their representative appeared at calendar call on May 28, 1985 or at the trial on June 6, 1985, where the Commissioner presented his case. On June 3, 1986 the tax court entered its decision dismissing the Edelsons' petitions for failure to prosecute and upholding the Commissioner's deficiency determinations. The tax court further ruled that the Commissioner had proved that Joseph committed fraud, that Harriet was liable as a transferee under New Jersey law, and that she was liable for interest from the date of the fraudulent conveyance. The Edelsons timely appeal.

### ANALYSIS

#### A. Dismissal for Lack of Prosecution

■ We review a tax court's decision to dismiss a case for lack of prosecution for an abuse of discretion. *See McCoy v. Commissioner*, 696 F.2d 1234, 1236 (9th Cir.1983).

■ The tax court has discretion to dismiss a case at any time and to enter judgment against a taxpayer who fails properly to prosecute, to comply with a court order to produce documents, or to comply with any other court order. Tax.Ct.R. 123(a), (b); *McCoy*, 696 F.2d at 1236. Although a court must explore meaningful alternatives prior to dismissing a case, it need not always exhaust every sanction short of dismissal before final action. *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir.1986).

■ The Edelsons' petitions for redetermination had languished for almost three years because of their numerous continuances and motions to move trial. The Edelsons failed to produce records after

being subpoenaed, failed to enter into a stipulation of facts, and failed to appear for trial. Accordingly, the tax court did not abuse its discretion in dismissing the Edelsons' petitions for failure properly to prosecute.

#### B. Deficiency Determination

■ Whether a rational foundation for deficiency determination exists is a factual question; the tax court's findings can only be overturned on a showing that they are clearly erroneous. *Adamson v. Commissioner*, 745 F.2d 541, 546 (9th Cir.1984).

■ Once the Commissioner has introduced some evidence that a taxpayer received unreported income, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the deficiency determination is arbitrary or excessive. *Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935); *Rapp v. Commissioner*, 774 F.2d 932, 935 (9th Cir. 1985); Tax Ct.R. 142(a). A taxpayer fails to meet this burden when he fails to offer any evidence to rebut the deficiency's presumption of correctness and refuses to comply with a court order. *Edwards v. Commissioner*, 680 F.2d 1268, 1271 (9th Cir.1982). Nevertheless, a court should allow the taxpayer some deductions if the taxpayer proves he is entitled to the deduction but cannot establish the full amount claimed. *Cohan v. Commissioner*, 39 F.2d 540, 544 (2d Cir.1930). *See also Coloman v. Commissioner*, 540 F.2d 427, 431 (9th Cir.1976). To ensure accuracy when inferential methods are used in reconstructing a taxpayer's income, the IRS must also investigate reasonable leads furnished by the taxpayer. *Holland v. United States*, 348 U.S. 121, 135–36, 75 S.Ct. 127, 135, 99 L.Ed. 150 (1954).

■ The Commissioner accounted for some deductions in asserting the deficiency and carried its burden showing that Joseph under-reported his income. Joseph argues, however, that the Commissioner was in possession of canceled checks which bore legends disclosing numerous deductible business expenses which were not deducted

from gross income.[3] While we strongly suspect the Commissioner failed to allow all the deductions to which the Edelsons were entitled, the *Cohan* rule does require *some* cooperation on the part of the taxpayer. Perhaps, as counsel pointed out at oral argument, the Edelsons were not aware of the implications of their confrontational conduct and are now ready to cooperate with the IRS; our task is confined to a review of the record before us. Because of his astounding conduct until this appeal, Joseph did not even meet his burden of going forward; instead, for whatever reason, he effectively waived his right to contest the deficiency when he disobeyed a court order, failed to appear at trial, and failed to offer any evidence rebutting the Commissioner's deficiency computation or showing his entitlement to deductible expenses. He also neglected to provide the IRS with reasonable leads. Consequently, the tax court did not commit clear error in upholding the Commissioner's deficiency determination.[4]

## C. Fraud Penalty

Review of a finding of fraud is a question of fact and such finding will be reversed only if clearly erroneous. *Akland v. Commissioner*, 767 F.2d 618, 621 (9th Cir.1985).

■■■■ Pursuant to Internal Revenue Code § 6653(b), "[i]f any part of any underpayment ... of tax ... is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment." The Commissioner has the burden of proving fraud by clear and convincing evidence. 26 U.S.C. § 7454(a); Tax Ct.R. 142(b). A court may infer fraudulent intent from various kinds of circumstantial evidence. *Bradford v. Commissioner*, 796 F.2d 303, 307 (9th Cir.1986). Such "badges of fraud," as compiled by our colleague Judge Hug, include: (1) understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or incon-

sistent explanations of behavior; (5) concealing assets; and (6) failure to cooperate with tax authorities. *Id.*

■■■■ The Commissioner proved that Joseph understated his income, kept inadequate records, failed to file valid tax returns for three consecutive years, transferred assets before filing his first invalid tax return, failed to cooperate with IRS agents, yet was an experienced businessman who had previously filed valid income tax returns. Moreover, Joseph's alleged self-incrimination rights were generalized. A taxpayer cannot base his failure either to cooperate with the IRS or to produce records on a generalized fear of self-incrimination. The fifth amendment privilege cannot be used as a method of evading payment of lawful taxes. *Edwards*, 680 F.2d at 1270. Joseph can be no more successful in asserting a fifth amendment privilege in this court on these facts than he was in the Third Circuit. *Edelson*, 604 F.2d at 234–35. Therefore, the tax court did not commit clear error in finding Joseph's underpayment was due to fraud. *See Bradford*, 796 F.2d at 308.

The Edelsons contend that there was no fraud because Joseph openly informed the IRS of his willful refusal to file. The Ninth Circuit has not directly addressed this defense; however, other circuits have. In *Raley v. Commissioner*, 676 F.2d 980, 984 (3d Cir.1982), the Third Circuit held that filing false W-4 forms and an invalid tax return did not amount to fraud under section 6653(b) when the taxpayer also informed the IRS he was not going to pay income taxes. In *Zell v. Commissioner*, 763 F.2d 1139, 1144 (10th Cir.1985), the Tenth Circuit, while adopting the rationale in *Raley*, nevertheless found the taxpayer guilty of tax fraud because his filing of false W-4 forms provided an "affirmative act of concealment or misrepresentation" amounting to fraud. *Id.* at 1146. In *Granado v. Commissioner*, 792 F.2d 91, 94

---

3. Indeed, the Edelsons' prior tax returns showed a pattern of valid business deductions averaging 80% of gross income.

4. While this court is bound by the record before us, the Commissioner is free, should either or both of the Edelsons apply for executive clemency, to forgive a portion of the tax on an appropriate showing. *See* I.R.C. § 6404(a)(1).

(7th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1378, 94 L.Ed.2d 692 (1987), the Seventh Circuit disagreed with *Zell* and *Raley,* holding that a taxpayer could not avoid the fraud penalty by openly disclosing his evasion of taxes.

Although distinguishable because it dealt only with undisclosed willful defiance, our court has indirectly considered this issue in *Powell v. Granquist,* 252 F.2d 56, 61–62 (9th Cir.1958), where we stated that "it is difficult to see why open defiance of a known law, with no attempt to hide such defiance, should any more negative the existence of fraudulent intent than where defiance in fact is subsequently guised under a claim of ignorance." We read *Powell* to mean that disclosed defiance, standing alone, would not bar a finding of fraud. Fraud under section 6653 is "intentional wrongdoing on the part of the taxpayer with the specific intent to avoid a tax known to be owing." *Akland,* 767 F.2d at 621 (citing *Conforte v. Commissioner,* 692 F.2d 587, 592 (9th Cir.1982)). This definition does not require that the taxpayer hide his defiance from the IRS. Whether or not Edelson disclosed his willful refusal to file is therefore irrelevant to the tax court's finding of fraud and this finding is not clearly erroneous.

**D. Transferee Liability**

We review findings of fact under the clearly erroneous standard. *Mayors v. Commissioner,* 785 F.2d 757, 759 (9th Cir. 1986). Under New Jersey law, the determination of whether there has been a fraudulent conveyance is a question of fact. *Coles v. Osback,* 22 N.J.Super.Ct. 358, 92 A.2d 35, 40 (1952), *cert. denied,* 11 N.J. 330, 94 A.2d 549 (1953).

 Internal Revenue Code § 6901(a) provides a procedure for the collection of an existing tax liability when a taxpayer transfers his assets to a transferee. *Mayors,* 785 F.2d at 759. State law, however, determines whether the transferee is liable under section 6901(a) for the transferor's taxes. *Commissioner v. Stern,* 357 U.S. 39, 42–45, 78 S.Ct. 1047, 1049–51, 2 L.Ed.2d 1126 (1958); *Mayors,*

785 F.2d at 759. The Commissioner has the burden of proving transferee liability by making a prima facie case of a fraudulent conveyance. *Id.* at 760; 26 U.S.C. § 6902(a); Tax Ct.R. 142(b). In this case, New Jersey law governs transferee liability.

Pursuant to N.J.S.A. 25:2–13, "[e]very conveyance made ... with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors is fraudulent as to both present and future creditors." Equity will infer actual intent when the circumstances surrounding the transaction present the inescapable inference that the conveyance was made to frustrate a claim. *See Green v. Carroll,* 116 N.J.Eq. 1, 172 A. 202 (1934). Indicia of fraudulent transfer recognized by New Jersey include: (1) a transfer of property in which the debtor retains possession or beneficial enjoyment, *see, e.g., Riebenack v. Crockett,* 83 N.J.Eq. 158, 90 A. 237, 238 (1914); (2) a transfer by the debtor during the pendency of a suit or in anticipation of a suit, *see, e.g., Horton v. Bamford,* 79 N.J.Eq. 356, 81 A. 761, 770 (1911); *Coleman v. Graff,* 94 N.J.Eq. 223, 119 A. 280, 281 (1922); and (3) a transfer of property for no or inadequate consideration, *see, e.g., ESB, Inc. v. Fischer,* 185 N.J.Super. 373, 448 A.2d 1030, 1032–33 (1982). Although not considered indicia of fraud, dealings between family members are at best viewed with suspicion. *See, e.g., Coles v. Osback,* 22 N.J.Super. at 364, 92 A.2d 35.

 Since the Commissioner introduced evidence showing Joseph transferred properties, valued at $149,500, to Harriet for $200 just weeks before he filed an invalid separate tax return, the tax court did not err in inferring actual intent to defraud and in finding Harriet liable as a transferee.

 Harriet argues that the United States was not a creditor within the meaning of N.J.S.A. 25:2–13. Under N.J.S.A. 25:2–7, "creditor" is broadly defined as including "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." As stated in *In re Ad-Yu Electronics, Inc.,*

834

71–1 USTC (CCH) ¶ 9132 (1968), tax liabilities, though unassessed, are deemed obligations due and owing at the close of the taxable year. Thus, the United States was a fixed and existing creditor at the time of the property transfer.

Harriet contends that the court erred in finding her liable as a transferee because the Commissioner failed to show Joseph's insolvency after the transfer. N.J.S.A. 25:2–10, which requires proof of insolvency to set aside a conveyance, is distinct from N.J.S.A. 25:2–13, which requires proof of actual intent but not insolvency. *See Telefest, Inc. v. VU–TV, Inc.*, 591 F.Supp. 1368, 1371 (D.N.J.1984); *Francis v. United Jersey Bank*, 162 N.J.Super. 355, 392 A.2d 1233, 1239 (1978), *aff'd*, 87 N.J. 15, 432 A.2d 814 (1981). Since the Commissioner proceeded under N.J.S.A. 25:2–13, proof of insolvency was not required for the tax court to find that Joseph's transfer was fraudulent.

Harriet finally contends that the tax court erred in allowing interest on the transferee liability to run from the date of transfer, rather than the date of assessment. Where transferee liability is found to exist but the transferred assets are insufficient to satisfy the transferor's total tax liability, a transferee's liability for interest is controlled by state law. *Estate of Samuel Stein*, 37 T.C. 945, 961 (1962). In New Jersey, a transferee must account for rents and profits from the time of the fraudulent conveyance. *Burne v. Partridge*, 61 N.J.Eq. 434, 48 A. 770, 771 (1901). Thus, the tax court properly determined Harriet's transferee liability for interest accrued at the time of the transfer.

We conclude that the tax court did not abuse its discretion in dismissing the Edelsons' petitions, and did not commit error in upholding the Commissioner's deficiency against Joseph. The tax court, moreover, did not commit error in finding that Joseph was liable for additions to tax for fraud and that Harriet was liable as a transferee under New Jersey law.

AFFIRMED.