8 F.3d 26
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Phillip S. FRY and K. Susan Fry, Petitioners-Appellants,
v.
COMMISSIONER, INTERNAL REVENUE SERVICE, Respondent-Appellee.
 No. 91-70560.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 3, 1993.
Decided Oct. 4, 1993.
 
 Before: FARRIS, POOLE and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellants Phillip and K. Susan Fry appeal from the Tax Court's assessment of tax deficiencies and supplemental taxes for the tax years 1977 through 1980. They challenge the court's computation of their income and its disallowance of their claimed deductions. They also challenge the court's finding that their returns were fraudulent, and they object to the court's rejection of an untimely 138-page reply brief. The Tax Court had jurisdiction over this case pursuant to 26 U.S.C. §§ 6213-14, 7442. Our jurisdiction comes from 26 U.S.C. § 7482. We now affirm.
 
 I. The Rejected Reply Brief
 
 3
 The Frys challenge the Tax Court's refusal to accept their untimely brief. They have included the 138-page document in their Excerpts of Record, and repeatedly refer to it in their appellate brief. The Frys claim that the Tax Court's rejection of the brief was an abuse of discretion and a violation of due process. These claims fail.
 
 
 4
 The Tax Court had already extended the briefing schedule four times, two of them at the Frys' request, for a total of five months' delay. The final deadline for the Frys' reply brief was August 31, 1989. On August 29, two days before their brief was due, the Frys asked the court for an additional three months' time, extending the deadline to November 30, 1989. Under these circumstances it was neither an abuse of discretion nor a due process violation for the court to turn down the Frys' request. Accordingly, we reject the Frys' arguments concerning the Tax Court's rejection of their reply brief.
 
 
 5
 Moreover, as the Frys acknowledge in their closing brief, it was improper for them to file the rejected Tax Court brief in their Excerpts of Record and then argue from it in their brief on appeal. See Circuit Rule 30-1.3 (unless necessary to the resolution of the appeal, district court briefs are prohibited from inclusion in the Excerpts of Record); Fed.R.App.P. 28(g) (except by permission of court, appellate briefs must be less than 50 pages). We consequently limit our review to the arguments contained in the Frys' appellate briefs.
 
 
 6
 II. The Tax Court's Application of the "Bank Deposit Method"
 
 
 7
 The Frys dispute the Tax Court's findings under the "bank deposit method" of income calculation. First, they contest the Tax Court's assessment of the deposits to their accounts. Second, they challenge the Tax Court's rejection of their claimed deductions.
 
 
 8
 Factual findings of the Tax Court are reviewed for clear error. Beck v. Commissioner, 678 F.2d 818, 820 (9th Cir.1982).
 
 
 9
 As discussed below, the Tax Court did not commit clear error either in calculating the Frys' deposits or in rejecting their claimed deductions.
 
 1. The Deposits
 
 10
 Where taxpayers refuse access to their records, the government may use the bank deposit method to reconstruct their income; it then becomes the "taxpayers' burden to show that these unexplained deposits came from a nontaxable source." Calhoun v. United States, 591 F.2d 1243, 1245 (9th Cir.1978), cert. denied, 439 U.S. 1118 (1979).
 
 
 11
 Without citation to legal authority or to facts substantiating their claims, the Frys simply declare the Tax Court wrong in both method and conclusion.
 
 
 12
 For example, the Frys complain that the Tax Court ignored certain check stubs and summary schedules they submitted in support of their contentions. The Frys say the check stubs and schedules showed that some of the bank deposits were not income, but transfers from one trust to another. But the Tax Court found the evidence unreliable for a number of reasons. It found (1) the stubs lacked third party verification of the amount and existence of payment, (2) the stubs were based on unreliable bookkeeping, and (3) the schedules contained inconsistencies and errors.
 
 
 13
 The Frys offer no evidence whatsoever to demonstrate that these findings were clearly erroneous. They simply state that this is so.
 
 
 14
 The Frys also assert, without citation to relevant authority, that "income tax law is based on source, not purpose," arguing that since some of the funds deposited into their accounts came from entities they controlled, the deposits represented loans, not income. But the Frys undermine their own theory. Their vigorous insistence that Mr. Fry was obligated and committed to repay these transfers as loans shows that the Frys do believe "purpose," and not just "source," is relevant to income tax assessments.
 
 
 15
 Because the Frys do not show clear error in the Tax Court's application of the bank deposit method, that court's income calculations are affirmed.
 
 2. The Deductions
 
 16
 The Tax Court allowed most of the Frys' claimed deductions. However, "[o]ther expenditures were disallowed for lack of substantiation, duplication, or because they were nondeductible personal expenses." For example, the Frys paid all of their personal family and living expenses from their business's checking accounts.
 
 
 17
 The Frys again do little more than state that the Commissioner and the Tax Court erred. They argue that the tax returns of certain of their syndicated trusts, necessary for verifying their claimed deductions, were never audited by the Commissioner, and that the statute of limitations for such an audit has run. But they do not say why the Commissioner's failure to audit those returns excuses the Frys' obligation to produce them in support of their claimed deductions.
 
 
 18
 The Frys also argue that the required trust returns were in the possession of the Commissioner. That the Commissioner, one of the parties to the Tax Court proceeding, may have had the returns is irrelevant. The relevant question is whether the returns were ever entered into the Tax Court record, something the Frys acknowledge never occurred.
 
 
 19
 Similarly irrelevant is the Frys' argument that because they "worked hard, [they] would not have had any personal travel." This is the Frys' effort to justify charging their personal expenses to the business. But again, this is not a showing of clear error.
 
 3. The Accrual Accounting Method
 
 20
 Finally, the Frys challenge the Tax Court's refusal to treat them as "accrual method taxpayers" for purposes of calculating their expenses. Such treatment would have allowed the Frys to write off certain bad debt expenses.
 
 
 21
 But the Tax Court found that the Frys failed to produce reliable books and records using the accrual method, foreclosing the court's use of the method. The Frys' challenge to this finding, a statement that the finding "is not supported by the evidence," is not a demonstration of clear error.
 
 III. The Tax Court's Findings of Fraud
 
 22
 The Frys dispute the Tax Court's finding of taxpayer fraud, and its resulting assessment of additional tax under 26 U.S.C. § 6653(b).[1] The Commissioner was required to prove fraud by clear and convincing evidence. Edelson v. Commissioner, 829 F.2d 828, 832 (9th Cir.1987). The question of whether he did so is one of fact, and is reviewed for clear error. Id.
 
 
 23
 A court may infer fraud from circumstantial evidence. Edelson, 829 F.2d at 832. Such evidence includes: "(1) understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealing assets; and (6) failure to cooperate with tax authorities." Id.
 
 
 24
 The Tax Court found many of these "badges of fraud," as they are called. It found that the Frys had a consistent pattern of underreporting their income, that they attempted to conceal income, that Mr. Fry was a sophisticated and shrewd businessperson familiar with what was required of him, and that Mr. Fry failed to cooperate with the authorities.
 
 
 25
 The Frys' only response to these findings is to state that "such findings are not sufficient to clearly and convincingly pin the badges on the taxpayer," and to refer to their rejected reply brief. They do not show clear error, nor does any appear in the Tax Court's findings.
 
 IV. The Statute of Limitations
 
 26
 The Frys claim they first received statutory notices of deficiency for their 1977-80 taxes in September 1986, and they argue that this violated the three-year statute of limitations contained in 26 U.S.C. § 6501(a). To the extent resolution of this question turns on factual findings, we review for clear error; to the extent questions of law or mixed fact-law questions are raised, our review is de novo. Mayors v. Commissioner, 785 F.2d 757, 759 (9th Cir.1986); Kelley v. Commissioner, 877 F.2d 756, 757 (9th Cir.1989).
 
 
 27
 The Frys' statute of limitations argument fails. First, the statute of limitations does not apply at all to the 1980 tax year. The statute in question, 26 U.S.C. § 6501, provides that the clock does not begin to run until the return is filed. § 6501(a). Since the Frys never filed a 1980 return, the statute never began to run for that year and was no bar to the Commissioner's proceedings.
 
 
 28
 Second, for the remaining years, 1977-79, an exception to the statute of limitations applies. "In the case of a false or fraudulent return ... the tax may be assessed ... at any time." 26 U.S.C. § 6501(c)(1). As discussed above, the Tax Court specifically found fraud in the Frys' returns. That fraud tolled the statute of limitations under this section.
 
 
 29
 But the Frys point out that the Tax Court found only Mr. Fry guilty of fraud, deeming the evidence insufficient to support such a finding against Mrs. Fry. They argue that the statute of limitations was therefore suspended only as to Mr. Fry. Mrs. Fry, they contend, was therefore immune from penalties and assessments imposed more than three years after the Frys' last return.
 
 
 30
 But the problem with this argument is that the fraud exception applies whenever there is "a false or fraudulent return." 26 U.S.C. § 6501(c)(1) (emphasis added). It does not say that all parties to the return must have engaged in fraud: "The section does not require fraudulent intent on the part of both spouses who file a joint return, even though such a distinction is explicitly recognized with regard to the assessment of additions to tax...." Ballard v. Commissioner, 740 F.2d 659, 663 (8th Cir.1984); accord Walsh v. United States, 507 F.Supp. 808, 813 (D.Minn.1981); Vannaman v. Commissioner, 54 T.C. 1011, 1018 (1970).
 
 
 31
 The reason for this rule is bound up with the purpose of the fraud exception. The exception exists because when a return is fraudulent, the IRS might need more than three years to uncover the wrongdoing. It doesn't matter if one party to the return is innocent of the fraud; the return itself is still fraudulent and just as difficult to ferret out. See Ballard, 740 F.2d at 663.
 
 
 32
 Consequently, the statute of limitations was suspended as to both Frys, and was not a bar to the proceedings against them.
 
 
 33
 The Tax Court's decision is affirmed.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 That section provides that an additional tax may be assessed "if any part of any underpayment ... of tax required to be shown on a return is due to fraud...." 26 U.S.C. § 6653(b)(1)