24 F.3d 246
 73 A.F.T.R.2d 94-1848
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ae R. HONG; Kun Kim, Petitioners-Appellants,
v.
COMMISSIONER INTERNAL REVENUE SERVICE, Respondent-Appellee.
 No. 92-70805.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 6, 1994.
Decided April 21, 1994.
 
 Before: HALL, LEAVY, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Kun Kim appeals the tax court's judgment upholding in part tax deficiencies and penalties assessed by the Internal Revenue Service for 1984, 1985, and 1986. Ae R. Hong appeals the tax court's determination that the IRS need not return $193,000 seized from her safety deposit box and applied to Kim's tax liability. We affirm with respect to Kim and reverse with respect to Hong.
 
 I.
 
 3
 In Kim's case, the tax court correctly determined the unreported income and sustained the assessed fraud penalties.
 
 A.
 
 4
 Regarding the determination of income, Kim argues that the tax court (1) improperly allocated the burden of proof; (2) made clearly erroneous findings of fact; (3) abused its discretion by excluding certain evidence; and (4) erred by not entering default judgment against the IRS.[1] We address each contention in turn.
 
 1.
 
 5
 Allocation of the burden of proof in tax deficiency cases is well settled:
 
 
 6
 In an action to collect tax, the government bears the burden of proof. The government can usually carry its initial burden, however, merely by introducing its assessment of tax due. Normally, a presumption of correctness attaches to the assessment, and its introduction establishes a prima facie case. The presumption does not arise[, however,] unless it is supported by a minimal evidentiary foundation.... [Moreover, i]f the taxpayer rebuts the presumption, it disappears. In a suit to collect tax on unreported income, the burden of proving the deficiency then reverts to the government.
 
 
 7
 United States v. Stonehill, 702 F.2d 1288, 1293-94 (9th Cir.1983) (citations omitted), cert. denied, 465 U.S. 1079 (1984). Accord, e.g., Edelson v. Commissioner, 829 F.2d 828, 831 (9th Cir.1987). Kim asserts that the court should have shifted the burden to the IRS because the assessment had no evidentiary basis or, alternatively, because he rebutted the presumption of correctness.
 
 
 8
 Regarding evidentiary foundation, Kim cites Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir.1979), a case in which we held that, "before the Commissioner can rely on th[e] presumption of correctness, the Commissioner must offer some substantive evidence showing that the taxpayer received income from the charged activity." Id. at 360. Subsequent cases have clarified, however, that Weimerskirch applies only where the IRS "failed to connect the taxpayer to alleged assets that were the basis of the deficiency." Delaney v. Commissioner, 743 F.2d 670, 672 (9th Cir.1984). This connection need only be "more than a 'naked' assessment without any evidentiary foundation." Karme v. Commissioner, 673 F.2d 1062, 1065 (9th Cir.1982). The IRS easily satisfied this minimal standard here. Kim has not denied involvement with the Spa, the income-generating activity at issue. Moreover, the IRS introduced as evidence Kim's 1984, 1985, and 1986 tax returns, all of which reported income from the business. The court, therefore, properly applied the presumption of correctness.
 
 
 9
 "To rebut the presumption, [Kim needed to] establish by a preponderance of the evidence that the determination [was] arbitrary or erroneous." Delaney, 743 F.2d at 671. Accord, e.g., Bradford v. Commissioner, 796 F.2d 303, 305 (9th Cir.1986). Kim asserts that the court's three-hundred percent reduction of the assessed deficiency illustrates that he had done so. We disagree.
 
 
 10
 At trial, the IRS established that its reconstruction of the Spa's income was based upon direct observations from its surveillance and upon a previously-conducted Newport Beach investigation. Although the court ultimately decided that $30 per customer was more reasonable than $100 per customer, this reduction does not make the initial assessment arbitrary. In Gordon, for example, we held that an assessment was not arbitrary or erroneous despite the fact that the tax court had reduced the deficiency by more than four-hundred percent. Gordon, 572 F.2d at 194. We have reached similar results in other cases. See Keogh, 713 F.2d at 502 (reduction of twenty percent); Stonehill, 702 F.2d at 1294-95 (reduction of sixty percent); cf. Mitchell v. Commissioner, 416 F.2d 101, 102 (7th Cir.1969) (presumption applies even where the tax court "drastically reduce[d]" the assessment), cert. denied, 396 U.S. 1060 (1970).
 
 
 11
 Here, "[t]he mistaken treatment of [the average fee] did not demonstrate a pattern of pervasive arbitrariness that could infect the entire assessment." Stonehill, 702 F.2d at 1296.
 
 
 12
 The Commissioner was forced to use [an] imprecise ... method of estimating income because the taxpayers' records were unreliable.... Some error is unavoidable in such a reconstruction. Errors arising from the taxpayers' attempts to conceal their income will rarely rebut the overall presumption of correctness. Skillful concealment must not raise an insurmountable barrier to proof.
 
 
 13
 Id. (emphasis added). "Arithmetic precision was originally and exclusively in the taxpayer's hands, and he had a statutory duty to provide it. Having defaulted in his duty, he cannot frustrate the Commissioner's reasonable attempts by compelling investigation and recomputation under every means of income determination. Nor should he be overly chagrined at the Tax Court's reluctance to credit every word of his negative wails." Bradford, 796 F.2d at 306 (quotation omitted).
 
 2.
 
 14
 Regarding the substance of the court's determination, Kim takes issue only with its conclusion that an average of three customers per hour visited the Spa. Kim contends that the court's calculation failed to account for visitors, slack periods, and sick employees. We hold that the court's findings are not clearly erroneous. E.g., Keogh, 713 F.2d at 502. First, several witnesses testified that, based upon their observations, between three and seven customers per hour entered the Spa. And, second, Kim offered no evidence, other than his own testimony, to rebut the court's determination. "The tax court is not obliged to believe a taxpayer's testimony rather than evidence introduced by the Commissioner." Id.
 
 3.
 
 15
 Kim contends that the court erred by excluding Exhibit 72, a notebook allegedly reflecting the Spa's 1987 receipts. The court refused to admit the evidence because Kim did not offer it until the last day of trial. We conclude that the court did not abuse its discretion by doing so. See Baker v. Delta Air Lines, Inc., 6 F.3d 632, 639 (9th Cir.1993) (appellate court reviews evidentiary rulings for abuse of discretion). First, Kim delivered the notebook to counsel eight months before trial. Second, the IRS would have been prejudiced by admission of the evidence because there was not sufficient time for rebuttal. And, third, the records involved only the 1987 tax year (which was not at issue in the case) and therefore were only of marginal relevance.
 
 4.
 
 16
 Finally, Kim argues that the court should have granted his motion for default judgment on the ground that the IRS seized, and never returned, customer records from the Spa. We "review the court's refusal to enter a default judgment against defendants for abuse of discretion." Pau v. Yosemite Park & Curry Co., 928 F.2d 880, 885 (9th Cir.1991). Kim and the IRS disagree about whether the agency ever removed the records in the first place and, if it did, whether it subsequently returned them. The IRS inventory of items at the Spa does refer to "3 client books." The record also indicates, however, that the IRS subsequently returned to Kim any item taken from the business. Aside from his self-serving assertions that he never received the books, Kim presented no evidence to establish that the IRS did not return everything. The court did not abuse its discretion by refusing to impose the "extreme sanction of entering a default judgment." Id. at 886.
 
 B.
 
 17
 Kim next challenges the tax court's affirmance of his penalty for tax fraud. The IRS may impose a penalty on taxpayers who fail to satisfy fully their tax liability "[i]f any part of any underpayment of tax required to be shown on a return is due to fraud." 26 U.S.C. Sec. 6663(a).[2] In this case, the court concluded that "Kim intentionally underpaid his Federal income tax." This finding is not clearly erroneous. See Edelson, 829 F.2d at 832 ("Review of a finding of fraud is a question of fact and such finding will be reversed only if clearly erroneous.").
 
 
 18
 "In the context of the 50 percent penalty ..., fraud is intentional wrongdoing on the part of the taxpayer with the specific intent to avoid a tax known to be owing. The Commissioner must prove fraud by clear and convincing evidence, but intent can be inferred from strong circumstantial evidence." Bradford, 796 F.2d at 307 (quotation and citations omitted). Courts may infer fraudulent intent from certain "badges of fraud," including "(1) understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealing assets; and (6) failure to cooperate with tax authorities." Edelson, 829 F.2d at 832.
 
 
 19
 Here, the court sustained the penalties because Kim (1) had not maintained records (nor informed the accountant who prepared his tax return) of the cash he withdrew from the Spa's receipts and (2) had consistently underreported income on his tax returns. These findings alone are sufficient to sustain an inference of fraud. See Lollis v. Commissioner, 595 F.2d 1189, 1191-92 (9th Cir.1979) (lack of records and underreporting of income is "sufficient" evidence of fraud); Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir.1962) ("Consistent and substantial understatement of income is by itself strong evidence of fraud. This proof, coupled with the showing that the records were both incomplete and inaccurate, and that the petitioner did not supply the bookkeeper with all of the data necessary for maintaining complete and accurate records, is enough to warrant the Tax Court in finding fraud.").[3]
 
 II.
 
 20
 Turning to Hong's case, she argues that once the IRS conceded its case against her it should have refunded the $193,000 seized from the safety deposit box. The tax court disagreed, holding that "[t]he evidence ... does not establish that the $193,000 seized by respondent was Hong's and not Kim's." We deem this finding to be clearly erroneous.[4]
 
 
 21
 Hong introduced evidence that she had independent wealth, that Kim had virtually no assets, that she had made Kim a signatory on the safety deposit box only for emergencies, and that Kim had never entered the box on his own. Moreover, Hong noted that, in California, ownership of a safety deposit box does not equate to ownership of items in the box. See Cal.Civ.Code Sec. 683.1. The IRS did not rebut this evidence, which established that, although Kim had access to the box, Hong was the only person who ever actually used it. The fact that Kim apparently absconded with large amounts of cash does not lead inexorably to the conclusion that he stowed the money in the safety deposit box.
 
 
 22
 We have a "definite and firm conviction that a mistake has been committed." Concrete Pipe and Prods. v. Construction Laborers Pension Trust, 113 S.Ct. 2264, 2280 (1993). Accord, e.g., Schultz v. Department of Army, 10 F.3d 649, 653 (9th Cir.1993). The inference drawn by the court (that Kim placed the cash he took in the safety deposit box) is simply not strong enough to support its factual finding. As a result, we reverse and remand Hong's case so that the tax court may order a refund of her overpayment pursuant to 26 U.S.C. Sec. 6512(b).
 
 III.
 
 23
 The tax court correctly determined Kim's unreported income and imposed penalties for fraud. The court, however, committed clear error by concluding that Hong did not own the $193,000 seized by the IRS.
 
 
 24
 AFFIRMED as to Kim. REVERSED and REMANDED as to Hong.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Kim also argues that the court should have excluded all evidence in the case because the IRS initiated its investigation on the basis of his nationality. We do not consider this argument because Kim failed to raise it below. E.g., Ratanasen v. State, 11 F.3d 1467, 1473 (9th Cir.1993); Estate of Quirk v. Commissioner, 928 F.2d 751, 758 (6th Cir.1991)
 
 
 [2]
 The relevant provision for the tax years at issue in this case was 26 U.S.C. Sec. 6653(b). The subsequent amendment made no substantive change to this section
 
 
 [3]
 Kim suggests that a revenue agent's encouragement to file returns for 1985 and 1986 somehow negates the court's finding of fraudulent intent. The agent, however, did not ask Kim to file false returns; he merely told him to file quickly. Kim knew, or should have known, that he had no right to falsify the returns
 
 
 [4]
 Hong contends that the IRS had the burden of proof on this issue because it introduced a "new matter" within the meaning of Tax Court Rule 142(a). Because we find the evidence insufficient to support the tax court's determination regardless of the burden of proof, we need not address this argument