T.C. Memo. 2017-34

UNITED STATES TAX COURT

MOHAMMAD M. ZARRINNEGAR AND MARY M. DINI, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 23183-14, 15989-15.              Filed February 13, 2017.

Basil J. Boutris and Jon Robert Vaught, for petitioners.

Annie Lee, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, Judge: Respondent determined deficiencies in petitioners'

Federal income tax and section 6662(a) accuracy-related penalties, as follows:[1]

_____

[1]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. Monetary amounts are rounded to the nearest dollar.

[*2]

|  | Year | Deficiency | Penalty sec. 6662(a) |
|---|---|---|---|
| | 2010 | $87,615 | $17,523 |
| | 2011 | 106,910 | 21,382 |
| | 2012 | 147,904 | 29,580 |

After concessions,[2] the issues for decision are: (1) whether petitioners are entitled to deductions greater than respondent has allowed for supplies, marketing, and office expenses; (2) whether petitioner husband is a real estate professional under section 469(c)(7)(B); and (3) whether penalties under section 6662(a) are appropriate.

---

[2]Petitioners claimed deductions for "Rent or lease * * * Other business property", "Lab fees", and "Continuing education" for 2011 and 2012. Respondent initially disallowed these deductions but has since conceded them in full.

Petitioners also claimed deductions for "Depreciation and section 179 expense" for 2010, 2011, and 2012. Both parties have conceded portions of the depreciation and sec. 179 expense deductions, leaving no issue to decide, as follows:

|  | 2010 | 2011 | 2012 |
|---|---|---|---|
| Respondent disallowed | $10,679 | $34,177 | $61,880 |
| Respondent conceded | -0- | 27,769 | 58,035 |
| Petitioners conceded | 10,679 | 6,408 | 3,845 |
| Remaining at issue | -0- | -0- | -0- |

[*3]                           FINDINGS OF FACT

Petitioners owned and operated two businesses during the years at issue:  a dental practice and a real estate business.

Dental Practice

Petitioners are both dentists.  During the years at issue they worked at their joint dental practice in shifts.  Petitioner wife worked Mondays, Wednesdays, Thursdays, and Fridays from 9 a.m. until 2:30 p.m. and some Saturdays from 8 a.m. until 12 p.m.  Petitioner husband worked at the dental practice Mondays, Wednesdays, Thursdays, and Fridays from 2:30 p.m. until 6 p.m.

Real Estate Business

During the years at issue petitioners' real estate business consisted of petitioner husband's real estate brokerage activity and four rental properties that petitioners owned and petitioner husband managed.  Petitioner wife did not participate in the real estate business.

Petitioner husband spent hundreds of hours on brokerage-related activities, including brokers' tours, listing searches, open houses, property viewings, and client meetings.  He also spent significant time each year managing petitioners' four rental properties.  All told, petitioner-husband spent over 1,000 hours on the real estate business during each year at issue.

**[*4]** Petitioners' Tax Returns

Petitioners filed a joint Federal income tax return for each year at issue. On Schedules C, Profit or Loss From Business, attached to these returns, petitioners reported gross income and total expenses of their dental practice as follows:[3]

|  | 2010 | 2011 | 2012 |
|---|---|---|---|
| Gross income | $794,203 | $704,945 | $785,060 |
| Total expenses | 326,399 | 322,239 | 404,534 |

On Schedules E, Supplemental Income and Loss, attached to their returns, petitioners reported losses from their real estate business of $221,582 for 2010; $242,276 for 2011; and $220,788 for 2012.

Notices of Deficiency

Respondent issued petitioners separate notices of deficiency for 2010 and for 2011-12 disallowing deductions for certain expenses reported on petitioners' Schedules C. Respondent also disallowed deductions for the losses reported on petitioners' Schedules E because he determined that they were passive activity losses.

---

[3]For each year at issue petitioners attached two Schedules C which together represent the dental practice. The amounts we list represent the gross income and total expenses of the dental practice as a whole.

**[*5]**   While residing in California, petitioners timely petitioned the Court with respect to both notices.  The cases have been consolidated for trial, briefing, and opinion.

OPINION

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous by a preponderance of the evidence.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[4]

Section 162(a) allows deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  An expense is ordinary if it is customary or usual within a particular trade, business, or industry or relates to a transaction "of common or frequent occurrence in the type of business involved." Deputy v. du Pont, 308 U.S. 488, 495 (1940).  An expense is necessary if it is appropriate and helpful for the development of the business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943).  Personal, living, and family expenses are generally not deductible.  Sec. 262.

---

[4]Petitioners do not assert and the record does not establish that the requirements have been met to shift the burden of proof pursuant to sec. 7491(a).

**[\*6]** The taxpayer bears the burden of substantiating expenses underlying claimed deductions by keeping and producing records sufficient to enable the Commissioner to determine the correct tax liability. Sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), (e), Income Tax Regs. Furthermore, section 274(d) imposes more rigorous substantiation requirements for certain expenses, including those for meals and entertainment.

I. Dental Practice Expense Deductions

Petitioner husband testified that many of the dental practice receipts for the years at issue had become unreadable because the ink had faded on account of water damage or the passage of time. Consequently, petitioners offered credit card statements at trial to substantiate expenses underlying the deductions at issue.

A. 2010 Supplies Expense Deductions

On their 2010 Schedules C petitioners claimed deductions of $42,807 for "Supplies". Respondent disallowed $11,813. The credit card statements petitioners provided to substantiate the expenses showed only $35,956 in charges. Petitioners therefore failed to offer any proof that $6,851 of the disallowed $11,813 of supplies expense deductions was ever incurred.

As for the remaining $4,962 of disallowed supplies expense deductions, petitioners have conceded that several of the charges listed were not deductible,

**[\*7]** such as a $218 charge at Sports Authority, a $664 charge at A-1 Party Rental Center, and approximately $429 in charges at various restaurants. More fundamentally, petitioners failed to adequately substantiate at least $4,962 of the charges they listed: Approximately $2,113 of the charges appear to have been at various grocery stores, and $9,372 of the charges were at Costco. Aside from petitioner husband's vague and general testimony that the charges at grocery stores were related to the dental practice and that the charges at Costco were for "office goods", petitioners offered no evidence to show specifically what items were purchased or how they related to the dental practice. After careful review of the record, we sustain respondent's disallowance in full.

### B.    2010 Other Expenses Deductions

On their 2010 Schedules C petitioners also claimed deductions of $18,946 for "Marketing" expenses. Respondent disallowed $9,305.[5] The credit card statements petitioners provided to substantiate the expenses show only $10,899 in charges for marketing expenses; petitioners therefore failed to establish that $8,047 of the disallowed $9,305 was ever incurred.

---

[5]More precisely, respondent disallowed $9,305 of deductions for "Other expenses", a category that includes the deductions claimed for marketing expenses. It appears from the parties' arguments, however, that their dispute concerns only the marketing subcategory of "Other expenses".

**[\*8]**  As for the remaining $1,258 of disallowed other expense deductions, $5,639 of the charges reported as marketing expenses was for meals at restaurants, and petitioners have conceded that they did not adequately substantiate any of their expenses for meals or entertainment.  After careful review of the record, we sustain respondent's disallowance in full.

C.    2011 Office Expense Deductions

On their 2011 Schedules C petitioners claimed deductions of $10,237 for "Office expense", which respondent disallowed in full.  According to petitioners' summary of office expenses for 2011, their credit card statements for 2011 show $13,837 of expenses.[6]

Respondent has conceded that petitioners are entitled to deduct $4,814 of office expenses on the basis of amounts shown in their credit card statements.  Petitioners have conceded that $442 of the expenses remaining in their summary is not deductible.

In addition to the expenses respondent has conceded are deductible, petitioners have adequately substantiated $70 of the $260 deduction claimed for

_____

[6]Consistent with petitioner husband's testimony and the documentary evidence, it appears that petitioners arrived at the $10,237 deduction for office expenses by totaling the amounts of expenses they believed were deductible and then for good measure subtracting $3,600, to be conservative in claiming these deductions.

[*9] the purchase of office toys for their pediatric patients. They offered credit card statements showing that they had spent $70 at toy stores; and petitioner husband testified credibly that these purchases were used in connection with pediatric patients. The credit card statement offered as evidence of the remaining $190 was illegible; petitioners have failed to adequately substantiate this amount.

The remaining $8,321 in charges is composed of undifferentiated charges at various stores. Apart from petitioner husband's vague and general testimony, petitioners offered no evidence to show what items were purchased or how they related to petitioners' dental practice. Consequently, after careful review of the record we sustain $5,353 of respondent's disallowance.[7]

D.    2012 Office Expense Deductions

On their 2012 Schedules C petitioners claimed deductions of $9,495 for "Office expense", which respondent disallowed in full. According to petitioners' summary of office expenses for 2012, the credit card statements for 2012 show $11,295 of expenses.[8]

---

[7]That is, the original disallowance of $10,237 minus respondent's concession of $4,814 minus the additional $70 of expenses petitioners adequately substantiated.

[8]Consistent with petitioner husband's testimony and the documentary evidence, it appears that petitioners arrived at the $9,495 deduction for office

(continued...)

**[*10]** Respondent has conceded that petitioners are entitled to deduct $1,986 of reported office expenses on the basis of amounts shown in their credit card statements. Petitioners have conceded that $1,104 of the expenses remaining in their summary is not deductible.

In addition to expenses respondent has conceded are deductible, petitioners have adequately substantiated $579 of the expenses underlying deductions they claimed. Petitioners offered credit card statements showing that they spent $388 at "Peninsula Eye", and petitioner husband testified credibly that this charge was for "professional goggles" used in the course of petitioners' dental practice to keep pathogens from entering the eyes. Petitioners also offered credit card statements showing that they paid $191 to "United Collection", and petitioner husband testified credibly that this charge was for a debt collection fee.

The remaining $7,627 in expenses listed in petitioners' summary are composed of undifferentiated expenses from various stores.[9] Apart from petitioner

---

[8](...continued)
expense by totaling the amount of expenses they believed were deductible and then for good measure subtracting $1,800, to be conservative in claiming these deductions.

[9]In fact, the credit card statements do not reflect some of the expenses listed in petitioners' summary, such as a June 28, 2012, charge of $56 and an August 13, 2012, charge of $114, both at the U.S. Postal Service. And some of the charges

(continued...)

**[\*11]** husband's vague and general testimony, petitioners did not offer any evidence to show what items were purchased or how they related to petitioners' dental practice. Consequently, after careful review of the record, we sustain $6,930 of respondent's disallowance.[10]

Petitioners ask us to estimate their deductible expenses under the so-called Cohan rule. See Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). While it is true that "a court should allow the taxpayer some deductions if the taxpayer proves he is entitled to the deduction but cannot establish the full amount claimed", Edelson v. Commissioner, 829 F.2d 828, 831 (9th Cir. 1987), aff'g T.C. Memo. 1986-223, "the Cohan rule does not 'require that such latitude be employed'", Norgaard v. Commissioner, 939 F.2d 874, 879 (9th Cir. 1991) (quoting Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957)), aff'g in part, rev'g in part T.C. Memo. 1989-390. "[T]o qualify for the estimation treatment under Cohan, the taxpayer must establish that he is entitled to some

---

[9](...continued)
listed appear to have been refunded, such as the August 21, 2012, charge of $57 at "Amazon Mktplace Pmts"; the credit card statements list a refund of the same amount from what appears to be the same vendor on September 7, 2012.

[10]That is, the original disallowance of $9,495 minus respondent's concession of $1,986 minus the additional $579 of expenses petitioners adequately substantiated.

[*12] deduction." Id. (citing Edelson, 829 F.2d at 831). As Cohan puts it: "Absolute certainty in such matters is usually impossible and is not necessary", but a court "should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making." Cohan v. Commissioner, 39 F.2d at 543-544.

After a thorough review of the record, we are convinced that estimating is not appropriate in this case. To the extent we have sustained respondent's disallowances, we have done so because petitioners have failed to offer any evidence that certain expenses were in fact incurred and because petitioners' lack of receipts, confusing and inconsistent accounting techniques, and vague testimony leave us with no reasonable means of differentiating or estimating which of the reported expenses were incurred in connection with the dental practice as ordinary and necessary business expenses. Having reviewed the testimony and exhibits thoroughly, we conclude that there is no basis for allowing an estimated amount in addition to the amounts already allowed.

## II.   Real Estate Professional

Respondent argues that section 469(a) requires disallowance of petitioners' claimed deductions for losses from their real estate business. Respondent does not

**[*13]** contest the existence or amounts of the losses or argue that the claimed deductions are disallowed or limited by any other provision or principle of law.

The Internal Revenue Code generally disallows a deduction for losses from passive activities of individuals and certain entities but allows such losses to be carried over and treated as a deduction allocable to such activity in the next taxable year. Sec. 469(a) and (b). A passive activity is a trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). Material participation is regular, continuous, and substantial involvement in business operations. Sec. 469(h)(1).

As a general rule, rental activities are per se passive whether or not the taxpayer materially participates. Sec. 469(c)(2). As an exception, however, rental activities of taxpayers in real property trades or businesses (real estate professionals) are not treated as passive if the material participation requirement is satisfied. Sec. 469(c)(7).

Under section 469(c)(7)(B) a taxpayer is a real estate professional if:

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

**[*14]**       (ii) such taxpayer performs more than 750 hours of services
during the taxable year in real property trades or businesses in which
the taxpayer materially participates.

In the case of a joint return, these requirements are met if and only if either spouse separately satisfies them. Id. Because petitioner wife did not participate in the real estate business, we consider whether petitioner husband's activities satisfy this test.

A taxpayer's material participation is determined separately with respect to each rental property unless the taxpayer makes an election to treat all interests in rental real estate as a single rental real estate activity. Sec. 469(c)(7)(A); sec. 1.469-9(e)(1), Income Tax Regs. Petitioners concede they made no such election.

A taxpayer can satisfy the material participation requirement if the individual meets any one of seven tests, including the following: "(2) The individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year". Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988).

Respondent has conceded that petitioner husband's participation in each of his real estate activities for each year at issue constitutes substantially all of the

[*15] participation in each activity of all individuals. The material participation element of the real estate professional test is therefore met.

Consequently, the elements of the real estate professional test remaining are (1) whether more than one-half of the personal services performed in trades or businesses by petitioner husband during each year at issue were performed in real property trades or businesses, and (2) whether petitioner husband performed more than 750 hours of services during each year at issue in real property trades or businesses. Because, as discussed more fully below, we find that petitioner husband worked fewer than 1,000 hours per year at the dental practice and more than 1,000 hours per year at the real estate business, both of these elements are met.

Section 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), provides:

> The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

[*16] A postevent "ballpark guesstimate" is not sufficient. <u>Moss v.</u>
<u>Commissioner</u>, 135 T.C. 365, 369 (2010).

To establish the hours petitioner husband spent each year on his real estate
business, petitioners offered petitioner husband's testimony and logs of hours for
2010, 2011, and 2012; each log showed that petitioner husband spent more than
1,000 hours per year on real estate activities.[11] Petitioner husband testified
credibly that the logs had been prepared contemporaneously. He also testified
credibly and at great length about the logs' contents; he was able to recall
extensive details relating to the entries. Petitioners also offered the testimony of
several other witnesses, including petitioner wife. All this testimony was credible
and tended to corroborate petitioner husband's logs and testimony. We therefore
find that petitioner husband worked more than 1,000 hours per year at the real
estate business.

---

[11]Petitioner husband testified that throughout the years at issue he had high
hopes for the brokerage side of the business, despite the financial malaise
burdening the housing market. Undaunted despite earning only $8,500 in
brokerage fees during the years at issue, petitioner-husband testified that he
poured hundreds of hours each year into broker's tours, listing searches, open
houses, property viewings, client meetings, and other related activities, likening
his efforts to the early labors of Bill Gates and Mark Zuckerberg, who toiled in
obscurity and relative poverty before reaping fabulous profits.

**[*17]**  We also find, on the basis of petitioners' credible testimony, that petitioner husband worked at the dental practice Mondays, Wednesdays, Thursdays, and Fridays from 2:30 p.m. until 6 p.m., for a total of 14 hours per week (that is, approximately 728 hours per year, if petitioner husband worked every week). Petitioner wife worked at the dental practice Mondays, Wednesdays, Thursdays, and Fridays from 9 a.m. to 2:30 p.m. and some Saturdays from 8 a.m. until 12 p.m. Petitioner husband's logs of real estate activities, and the testimony of the various witnesses about the time petitioner husband spent on real estate activities, tend to corroborate--at least indirectly--petitioner husband's limited schedule at the dental practice in the light of the time he was spending in pursuit of his real estate business.  After careful review of all the evidence, giving due account to the credibility of petitioners and the other witnesses, we are persuaded that petitioner husband worked fewer than 1,000 hours at the dental practice in each year at issue.

We therefore conclude that petitioner husband's participation in real estate activities for 2010, 2011, and 2012 meets the test in section 469(c)(7)(B). Consequently, section 469 does not disallow petitioners' deductions for losses from rental properties, and respondent's determination in this regard is not sustained.

[*18] III.   Section 6662(a) Penalties

Section 6662(a) and (b)(1) imposes an addition to tax of 20% on the portion of an underpayment attributable to any one of various factors, one of which is "[n]egligence or disregard of rules or regulations."[12]

Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and "'disregard' [of rules or regulations] includes any careless, reckless, or intentional disregard."  Sec. 6662(c).  Negligence is determined by testing a taxpayer's conduct against that of a reasonable, prudent person.  Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), aff'g 79 T.C. 714 (1982).

As noted earlier, a taxpayer is required to substantiate expenses underlying claimed deductions by keeping and producing records sufficient to enable the Commissioner to determine the correct tax liability.  Sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; sec. 1.6001-1(a), (e), Income Tax Regs.

Petitioners overstated deductions in the following amounts for the following expenses:

---

[12]Respondent has the burden of production with respect to the penalties. See sec. 7491(c).

[*19]

| Deductions | 2010 | 2011 | 2012 |
|---|---|---|---|
| Depreciation | $10,679 | $6,408 | $3,845 |
| Supplies | 11,813 | -0- | -0- |
| Other | 9,305 | -0- | -0- |
| Office | -0- | 5,353 | 6,930 |
| Total | 31,797 | 11,761 | 10,775 |

Petitioners have conceded they cannot substantiate the portions of their depreciation deductions listed above.[13] And insofar as we have sustained respondent's disallowances of other claimed deductions, as listed above, we have done so because petitioners did not produce records sufficient to substantiate the expense deductions. Respondent has met his burden of production to show that petitioners were negligent and disregarded the applicable regulations insofar as they overstated their deductions.

A penalty under section 6662(a) does not apply to any part of an underpayment of tax if there was reasonable cause for such portion and the taxpayer acted in good faith with respect to such portion. Sec. 6664(c)(1). Petitioners bear the burden of proving reasonable cause and good faith. See Higbee v. Commissioner, 116 T.C. 438, 449 (2001). Petitioners do not contend-- nor does the record demonstrate--that they had reasonable cause or acted in good

---

[13]See supra note 2.

**[\*20]** faith with respect to the portions of the underpayments that are sustained in the foregoing analysis.[14]

Accordingly, we sustain the section 6662(a) penalties with respect to the underpayments attributable to petitioners' overstatement of deductions, as listed above.

To reflect the foregoing,

Decisions will be entered under

Rule 155.

---

[14]Petitioners argued that a sec. 6662(a) penalty should not apply to any underpayments attributable to disallowance of the deduction for real estate losses, but they did not argue similarly with respect to the disallowances we have sustained.