**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES C. SLONE; NORMA L. SLONE;
SLONE REVOCABLE TRUST; UA
DATED SEPTEMBER 20, 1994;
TRANSFEREE,
    *Petitioners-Appellees*,

v.

COMMISSIONER OF INTERNAL
REVENUE,
    *Respondent-Appellant*.

No. 12-72464

Tax Ct. No.
6632-10

NORMA L. SLONE,
    *Petitioner-Appellee*,

v.

COMMISSIONER OF INTERNAL
REVENUE,
    *Respondent-Appellant*.

No. 12-72495

Tax Ct. No.
6629-10

SLONE FAMILY GST TRUST,
*Petitioner-Appellee*,

v.

COMMISSIONER OF INTERNAL
REVENUE,
*Respondent-Appellant*.

No. 12-72496

Tax Ct. No.
6630-10

JAMES C. SLONE,
*Petitioner-Appellee*,

v.

COMMISSIONER OF INTERNAL
REVENUE,
*Respondent-Appellant*.

No. 12-72497

Tax Ct. No.
6631-10

ORDER AND
AMENDED
OPINION

Appeal from a Decision of the
United States Tax Court

Argued and Submitted
November 21, 2014—San Francisco, California

Filed June 8, 2015
Amended August 28, 2015

Before: John T. Noonan and Sandra S. Ikuta, Circuit
Judges and William H. Albritton, III,[*] Senior District
Judge.

Order;
Opinion by Judge Ikuta;
Partial Concurrence and Partial Dissent by Judge Noonan

**SUMMARY**[**]

**Tax**

The panel vacated and remanded a decision by the Tax
Court on a petition for redetermination of federal income tax
deficiency involving an asset and stock sale.

Slone Broadcasting Co. sold its assets to Citadel
Broadcasting Co. Slone's shareholders then sold their shares
to Berlinetta, Inc., which changed its name to Arizona Media
and was later administratively dissolved for failure to file an
annual report. The Internal Revenue Service sent notices of
tax liability to the former shareholders of Slone Broadcasting,
claiming that they were liable as "transferees" for taxes owed
on Slone Broadcasting's asset sale, under 26 U.S.C. § 6901,
and that the IRS could disregard the form of the stock sale

---

[*] The Honorable William H. Albritton III, Senior District Judge for the
U.S. District Court for the Middle District of Alabama, sitting by
designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

because the substance of the transaction was that Slone Broadcasting dissolved upon selling its assets, then distributed those assets to its shareholders through the stock sale. The Tax Court determined that the stock sale was a legitimate transaction whose form must be respected.

The panel held that the Tax Court applied an incorrect test in making this determination. The panel explained that, when the Commissioner of Internal Revenue claims a taxpayer was "the shareholder of a dissolved corporation" for purposes of § 6901, but the taxpayer did not receive a liquidating distribution if the form of the transaction is respected, a court must consider the relevant subjective and objective factors to determine whether the formal transaction "had any practical economic effects other than the creation of income tax losses." The panel remanded for the Tax Court to apply the proper legal standard under *Comm'r v. Stern*, 357 U.S. 39 (1958).

Judge Noonan concurred in part and dissented in part. He concluded that the record is sufficient to reach the merits of the first prong of the *Stern* test, and would hold that the stock sale transaction had no economic substance and that the shareholders are transferees under § 6901. He would remand only on the question of state law substantive liability (the second prong of *Stern*).

**COUNSEL**

Arthur T. Catterall (argued) and Francesca Ugolini (argued), Assistant United States Attorneys; Kathryn Keneally, Assistant Attorney General; Tamara W. Ashford, Deputy Assistant Attorney General; Gilbert S. Rothenberg and Kenneth L. Greene, Attorneys, Tax Division, United States Department of Justice, Washington, D.C., for Respondent-Appellant.

Stephen E. Silver (argued), Jason M. Silver, and David R. Jojola, Silver Law PLC, Scottsdale, Arizona, for Petitioners-Appellees.

**ORDER**

The opinion filed June 8, 2015, and appearing at 788 F.3d 1049, is hereby amended as follows:

On page 1053, the second sentence of the penultimate paragraph and the final paragraph should be deleted and replaced with the following:

> The test for this second prong depends on the law of the state where the transfer occurred. *See, e.g.*, *id.* ("Under the [New York Uniform Fraudulent Conveyance Act], a party seeking to recharacterize a transaction must show that the transferee had 'actual or constructive knowledge of the entire scheme that renders [its] exchange with the debtor fraudulent.'") (alterations in original) (quoting *Diebold Found., Inc. v. Comm'r*, 736 F.3d 172,

184–85 (2d Cir. 2013)). The two Stern test prongs "are separate and independent inquiries." *Salus Mundi*, 776 F.3d at 1012.

With this amendment, the petition for rehearing, filed July 16, 2015, is **DENIED**. No further petitions for rehearing or rehearing en banc will be entertained.

---

**OPINION**

IKUTA, Circuit Judge:

This appeal involves two sales. First, Slone Broadcasting Co. sold essentially all of its assets to Citadel Broadcasting Co. for $45 million. The shareholders of Slone Broadcasting then sold all their shares to Berlinetta, Inc. for $33 million. The substance of the stock sale, according to the Commissioner of the Internal Revenue Service (IRS), is that the shareholders received a liquidating distribution from the corporation. The Commissioner contends that the form of this transaction should be disregarded for federal tax law purposes. The shareholders, in turn, claim that the transaction was a legitimate stock sale transaction and its form must be respected. The tax court agreed with the shareholders. On appeal, we conclude that the tax court applied an incorrect test in holding that it would respect the form of the stock sale.

**I**

Slone Broadcasting Co., a radio broadcasting business, had two shareholders: the Slone Revocable Trust, for which James C. Slone and his wife Norma L. Slone were trustees,

and the Slone Family GST Trust, for which John Barkley was the sole trustee. On December 21, 2000, Slone Broadcasting entered into an asset purchase agreement with Citadel Broadcasting Co., in which Citadel agreed to pay $45 million for all assets of the radio stations owned and operated by Slone Broadcasting. The transaction closed in July 2001. Because Slone Broadcasting's basis in these assets was $6.4 million, Slone Broadcasting realized a capital gain of approximately $38.6 million and incurred an estimated federal and state income tax liability of $15.3 million. The corporation did not make any distributions to the shareholders. In October 2001, Slone Broadcasting made its first federal income tax payment of $3.1 million to the IRS for the tax year ended June 30, 2002.

Before the transaction with Citadel closed, Fortrend International, LLC expressed an interest in a merger deal with Slone Broadcasting. Fortrend proposed purchasing all of Slone Broadcasting's shares for $29.8 million, and then restructuring the company to engage in the asset recovery business. Slone Broadcasting's shareholders investigated whether Fortrend and its offer were legitimate. A tax attorney hired by the shareholders confirmed that Fortrend's business plan projections were reasonable, and he consulted with an industry expert to confirm that Fortrend and its third-party service provider were reputable and were represented by well-regarded accounting and law firms. When the shareholders asked for information regarding the methods it would use to reduce the shareholders' tax liability, Fortrend would not respond, claiming its methods were proprietary. Nevertheless, Fortrend assured Slone Broadcasting that the transaction would not be a "listed transaction" pursuant to IRS Notice 2001-51, 2001-2 C.B. 190, which specifies tax avoidance transactions that must be disclosed or registered.

On December 10, 2001, the Slone Broadcasting shareholders agreed to sell all the shares of Slone Broadcasting to Berlinetta, Inc., a Fortrend affiliate, for $35.8 million. Berlinetta agreed to assume Slone Broadcasting's income tax liability. The shareholders, Slone Revocable Trust and the Slone Family GST Trust, received cash payments of $31 million and $2.6 million, respectively, from the sale.

After closing, Slone Broadcasting merged with Berlinetta. The new company changed its name to Arizona Media Holdings, Inc. On December 13, 2001, a shareholder of Arizona Media contributed Treasury bills with a basis of $38.1 million to the new company. Arizona Media then sold the bills for $108,731. Arizona Media filed its tax return for the tax year ended June 30, 2002, reporting a $37.9 million gain from the asset sale and an offsetting loss of $38 million from the Treasury bill sale. Arizona Media claimed it had no income tax liability, and requested a refund for the $3.1 million tax payment made by Slone Broadcasting. The IRS granted this refund.

The IRS began investigating Arizona Media in March 2005. The IRS assessed a tax deficiency for taxes due on Slone Broadcasting's December 2000 sale of assets to Citadel in the amount of $13.5 million in 2008, along with a penalty of $2.7 million and interest of $7.3 million.[1] Arizona Media failed to pay any of the assessed tax, penalty, or interest. In August 2009, the state of Arizona administratively dissolved Arizona Media for failure to file an annual report.

---

[1] Arizona Media had agreed to extend the limitations period in which the IRS could assess tax liability through May 2008.

After failing to collect the tax deficiency from Arizona Media, the IRS sent notices of liability to the former shareholders of Slone Broadcasting. The notices claimed that the shareholders were liable for the taxes owed on Slone Broadcasting's sale of assets to Citadel because the shareholders were "transferees" of Slone Broadcasting for purposes of 26 U.S.C. § 6901. (Section 6901 authorizes the IRS to require a transferee of assets to pay the unpaid taxes owed by the transferor under certain circumstances.) The IRS took the position that it could disregard the form of the shareholders' sale of Slone Broadcasting stock to Berlinetta. Instead, according to the IRS, the substance of the transaction was that Slone Broadcasting dissolved upon selling its assets to Citadel, and then distributed those assets to its shareholders through the Fortrend transaction.

The shareholders filed petitions for review of this determination in tax court, arguing that the form of the stock sale transaction to Berlinetta should be respected, and therefore the shareholders were not "transferees" of Slone Broadcasting's assets under § 6901.

The tax court agreed, holding that "[w]e will respect the form of the transactions in this case." It first found that the asset sale between Slone Broadcasting and Citadel was genuinely independent from the stock sale between Slone Broadcasting and Berlinetta, and that there was no evidence that the Slone Broadcasting shareholders conducted the asset sale as the first step in a tax scheme to offset the potential capital gains from the sale. Second, the court found that the Slone Broadcasting shareholders neither knew, nor should have known, that Fortrend and Berlinetta were involved in an illegitimate tax evasion scheme. The court noted that when the shareholders asked for more information about Fortrend's

methods for offsetting gains from the asset sale, they were told that the methods were proprietary. The court concluded that the shareholders had no duty to conduct further investigation, and no responsibility for any tax strategies adopted by Berlinetta after the transaction closed.

Based on these findings and conclusions, the tax court held that neither the substance over form doctrine, nor any related doctrine, required the tax court to "recast the stock sale as a liquidating distribution."[2]  The tax court concluded that the form of the stock sale between the shareholders and Berlinetta should be respected, and therefore rejected the IRS's theory that the shareholders were liable for taxes, interest, and penalties arising from Slone Broadcasting's sale of its assets. The Commissioner timely appealed.

## II

We have jurisdiction over this appeal under I.R.C. § 7482(a)(1). We review a tax court's factual determinations for clear error and its application of legal standards de novo. *See Sacks v. Comm'r*, 69 F.3d 982, 986 (9th Cir. 1995). Because a tax court must apply the correct legal standards when it characterizes a transaction for tax purposes, *see id.*, we reject the shareholders' argument that such a characterization raises only questions of fact.

---

[2] The tax court held that the Commissioner had waived an alternative argument that the stock sale should be disregarded for tax purposes under the economic substance doctrine, but did not explain the difference between this doctrine and the "substance over form" doctrine which it considered. As explained below, any subtle differences between these doctrines is not relevant for our analysis here.

## A

The question before us is whether the Slone Broadcasting shareholders can be held liable for taxes on Slone Broadcasting's sale of assets to Citadel because the shareholders were "transferees" of the proceeds of that sale.

Under 26 U.S.C. § 6901, the Commissioner can assess tax liability against a taxpayer who is "the transferee of assets of a taxpayer who owes income tax." *Salus Mundi Found. v. Comm'r*, 776 F.3d 1010, 1017 (9th Cir. 2014). Tax liabilities on transferred assets shall, with certain exceptions, be "assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the cases of taxes with respect to which the liabilities were incurred." 26 U.S.C. § 6901.

While federal law provides the procedure for collecting tax liabilities from a transferee, state law answers the question whether the alleged transferee is substantively liable for the tax. *Comm'r v. Stern*, 357 U.S. 39, 44–45 (1958). Therefore, in order to impose tax liability on a transferee, a court must engage in a two-pronged inquiry, *see Salus Mundi*, 776 F.3d at 1018 (citing *Stern*, 357 U.S. at 42, 44–45), which is sometimes called the *Stern* test. The first prong asks: "is the party a 'transferee' under § 6901 and federal tax law?" *Id*. Under federal law, a "transferee" is defined as including a "donee, heir, legatee, devisee, [or] distributee." 26 U.S.C. § 6901(h). Treasury regulations further define the term "transferee" to include "the shareholder of a dissolved corporation." 26 C.F.R. § 301.6901-1(b).

The second prong of the *Stern* test asks: "is the party substantively liable for the transferor's unpaid taxes under

state law?" *Salus Mundi*, 776 F.3d at 1018.  The test for this second prong depends on the law of the state where the transfer occurred.  *See, e.g.*, *id.* ("Under the [New York Uniform Fraudulent Conveyance Act], a party seeking to recharacterize a transaction must show that the transferee had 'actual or constructive knowledge of the entire scheme that renders [its] exchange with the debtor fraudulent.'") (alterations in original) (quoting *Diebold Found., Inc. v. Comm'r*, 736 F.3d 172, 184–85 (2d Cir. 2013)).  The two *Stern* test prongs "are separate and independent inquiries." *Salus Mundi*, 776 F.3d at 1012.

**B**

The Commissioner argues that the tax court erred in analyzing the first prong of the *Stern* test: whether the shareholders are "transferees" as "shareholder[s] of a dissolved corporation."  26 C.F.R. § 301.6901-1(b).  The parties do not dispute that if the form of the stock sale transaction between the shareholders and Berlinetta is respected, the shareholders did not receive a liquidating distribution from a dissolved corporation, and therefore were not transferees of Slone Broadcasting's assets (or liable for Slone Broadcasting's taxes).  Therefore, the crucial question is whether the tax court erred in respecting the form of the shareholders' stock sale to Berlinetta for federal tax purposes under the first prong of the *Stern* test, leaving it unnecessary for the tax court to analyze the shareholders' substantive liability under state law under the second prong of the *Stern* test.

Although we have not previously considered how a court should analyze a transaction for purposes of transferee liability under § 6901, both the Supreme Court cases, and our

own precedent, require us to look through the form of a transaction to consider its substance. The Supreme Court has long recognized "the importance of regarding matters of substance and disregarding forms," *United States v. Phellis*, 257 U.S. 156, 168 (1921), because "[t]he incidence of taxation depends upon the substance of a transaction," *Comm'r v. Court Holding Co.*, 324 U.S. 331, 334 (1945). In explaining the factors that should guide a court's analysis regarding when it is appropriate to disregard the form of a transaction, the Supreme Court framed the inquiry as whether "there is a genuine multiple-party transaction with economic substance which is compelled or encouraged by business or regulatory realities, is imbued with tax-independent considerations, and is not shaped solely by tax-avoidance features that have meaningless labels attached." *Frank Lyon Co. v. United States*, 435 U.S. 561, 583–84 (1978).

We have interpreted *Frank Lyon* as requiring courts to consider both subjective and objective factors in characterizing a transaction for tax purposes. *See Casebeer v. Comm'r*, 909 F.2d 1360, 1362–63 (9th Cir. 1990). We have used different terminology from time to time, but consistently apply the same approach. In *Casebeer*, we applied "a two-part test for determining whether a transaction is a sham: 1) has the taxpayer shown that it had a business purpose for engaging in the transaction other than tax avoidance? 2) has the taxpayer shown that the transaction had economic substance beyond the creation of tax benefits?" *Id.* at 1363 (citing *Bail Bonds by Marvin Nelson, Inc. v. Comm'r*, 820 F.2d 1543, 1549 (9th Cir. 1987)); *see also Sacks*, 69 F.3d at 987–88 (considering subjective and objective factors in analyzing whether a transaction was a sham). Similarly, in *Reddam v. Commissioner*, we applied the "economic substance doctrine," which likewise focused on two prongs:

"the subjective aspect of whether the taxpayer intended to do anything other than acquire tax deductions, and the objective aspect of whether the transaction had any economic substance other than creation of tax benefits." 755 F.3d 1051, 1059 (9th Cir. 2014) (quoting *Sacks*, 69 F.3d at 987). Finally in *Stewart v. Commissioner*, we referred to the "substance-over-form doctrine" as part of a well-established body of common law that included consideration of a transaction's "business purpose" and "economic reality." 714 F.2d 977, 987–88 (9th Cir. 1983).

In determining whether to disregard the form of a transaction, we do not conduct a "rigid two-step analysis" applying the subjective and objective factors, but rather focus "holistically on whether the transaction had any practical economic effects other than the creation of income tax losses." *Reddam*, 755 F.3d at 1060 (internal quotation marks and emphasis omitted); *see also Sacks*, 69 F.3d at 987–92 (looking at a transaction as a whole to determine whether it was a sham). If a common sense review of the transaction leads to the conclusion that a particular transaction does not have a non-tax business purpose or "any economic substance other than creation of tax benefits," *Reddam*, 755 F.3d at 1059 (internal quotation mark omitted), the form of that transaction may be disregarded, and the Commissioner may rely on its underlying economic substance for tax purposes.

This approach to characterizing a transaction for tax purposes, considering both subjective and objective factors, is also used by other circuits, although they too describe in it varying ways. *See, e.g.*, *Feldman v. Comm'r*, 779 F.3d 448, 454 (7th Cir. 2015) (noting that the "animating principle" of each of "several related, overlapping doctrines used in tax cases," including "the 'substance over form' doctrine, the

'business purpose' doctrine, [and] the 'economic substance' doctrine," is that "the law looks beyond the form of a transaction to discern its substance"). As *Feldman* noted, "[t]he distinctions between these doctrines are subtle, if they exist at all." *Id.* at 454 n.6; *see also* Bittker and Lokken, *Federal Taxation of Income, Estates and Gifts* ¶ 4.3.4A (3d ed. Supp. 2014) (noting that the substance over form doctrine, the business purpose doctrine, the economic substance doctrine, and the sham transaction doctrine have tended to coalesce in the case law).[3] Congress has codified a similar approach considering subjective and objective factors.[4]

We conclude that this approach is applicable for determining whether a taxpayer is a transferee for purposes of § 6901. Accordingly, when the Commissioner claims a taxpayer was "the shareholder of a dissolved corporation" for purposes of 26 C.F.R. § 301.6901-1(b), but the taxpayer did not receive a liquidating distribution if the form of the transaction is respected, a court must consider the relevant subjective and objective factors to determine whether the formal transaction "had any practical economic effects other

---

[3] *But see Altria Grp., Inc. v. United States*, 658 F.3d 276, 291 (2d Cir. 2011) (stating, without explanation, that "[t]he substance over form doctrine and the economic substance doctrine are independent bases to deny a claimed tax deduction").

[4] In 2010, Congress revised 26 U.S.C. § 7701 to clarify that a transaction has economic substance when: (1) the transaction meaningfully changes the taxpayer's economic position and (2) the taxpayer has a substantial purpose for entering into the transaction. Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, § 1409(a), 124 Stat. 1029 (2010). This provision applies only to transactions entered into after March 30, 2010, *id.* § 1409(e), and is therefore inapplicable to the Slone Broadcasting transaction.

than the creation of income tax losses." *Reddam*, 755 F.3d at 1060 (internal quotation mark omitted).

## C

We now apply these principles to the question whether the tax court erred in holding that the Commissioner could not impose the tax liability of Slone Broadcasting/Arizona Media on the Slone Broadcasting shareholders. According to the Commissioner, the tax court should have found that the "objective economic realities" establish that the stock sale between the shareholders and Berlinetta was in substance a liquidating transaction. Further, the Commissioner asserts that the tax court should have found that Slone Broadcasting was a "shell with nothing but cash and significant tax liabilities" when the shareholders sold the stock, because it had no ongoing business activities, no contractual obligations, and no debts aside from its tax liability. The Commissioner concludes that the stock sale was effectively a liquidation of the company, terminating its business operations and leaving the shareholders with cash.

Not surprisingly, the Slone Broadcasting shareholders disagree. They claim that after its asset sale to Citadel, Slone Broadcasting retained the human capital and resources to acquire another radio station, and therefore was not a "lifeless shell" at the time of its stock sale to Berlinetta. The shareholders also argue that they had no improper tax avoidance purposes for entering into the sale. Further, the shareholders assert that the stock sale had economic substance because Fortrend/Berlinetta actively engaged in debt recovery after the sale.

We cannot resolve this dispute because the tax court failed to apply the correct legal standard for characterizing the stock sale transaction for the purposes of federal transferee liability. The court did not address either the subjective or objective factors we apply in characterizing a transaction for tax purposes, as it failed to make any finding on whether the shareholders had a business purpose for entering into the stock purchase transaction other than tax avoidance, or whether the stock purchase transaction had economic substance other than shielding the Slone Broadcasting shareholders from tax liability. Instead, the tax court focused its factual inquiry and analysis on factors that might be relevant to the second prong of the *Stern* test for assessing transferee liability, whether a party is substantively liable for the transferor's unpaid taxes as a matter of state law. For instance, the tax court's findings that the shareholders had not orchestrated the asset sale and the stock sale as a single scheme for tax evasion purposes, that Fortrend and its third-party service provider were legitimate players in the debt collection industry, and that the shareholders had no reason to believe that Fortrend was using illegitimate tax evasion methods and had no duty to inquire further all relate to the question whether the shareholders lacked actual or constructive knowledge of the entire tax evasion scheme that rendered their transaction with Fortrend fraudulent under state law. *See Salus Mundi*, 776 F.3d at 1020. But the tax court did not use these factual findings to analyze the shareholders' liability under the applicable state law; it instead concluded, based on these findings, that the form of the stock sale should be respected for the shareholders' transferee status under the first prong of the *Stern* test. This was an error.

Because the tax court applied the wrong legal standard to the question of transferee liability, it failed to make findings relating to the relevant factors for determining whether the Commissioner could properly disregard the form of the transaction. The tax court should make these determinations in the first instance. *See Lewis v. Comm'r*, 560 F.2d 973, 978 (9th Cir. 1977) (reversing and remanding when the tax court did not make proper factual findings). On remand, the tax court should make the findings necessary to apply the *Stern* test correctly. Under the first prong of this test, the tax court should apply the relevant subjective and objective factors to determine whether the Commissioner erred in disregarding the form of the transaction in order to impose tax liability on the shareholders as "transferees" under § 6901. Under the second prong of the *Stern* test, the tax court should analyze whether the shareholders are liable under state law for Slone Broadcasting/Arizona Media's unpaid tax liability. *See Salus Mundi*, 776 F.3d at 1018, 1020. The tax court may begin its analysis with either prong. The Commissioner may hold the shareholders liable as "transferees" under § 6901 only if both prongs of the *Stern* test are satisfied. *See id.*[5]

**VACATED AND REMANDED.**

NOONAN, Circuit Judge, concurring in part and dissenting in part:

I concur in parts I-IIB of the opinion. I write separately because I conclude that the record is sufficient to reach the

---

[5] Costs are awarded to the Commissioner.

merits of the federal law inquiry under 26 U.S.C. § 6901. I would hold that the transaction between Slone Broadcasting and Berlinetta had no economic substance and that the Slone Broadcasting shareholders are transferees under 26 U.S.C. § 6901. Therefore, I would remand to the Tax Court only on the question of state law substantive liability.

The Supreme Court has stated that "[t]he general characterization of a transaction for tax purposes is a question of law subject to review," even though "[t]he particular facts from which the characterization is to be made are not so subject." *Frank Lyon Co. v. United States*, 435 U.S. 561, 581 n.16 (1978). As the opinion correctly articulates, the standard in this circuit is that "[t]he Tax Court's factual determinations about a transaction's economic substance are reviewed for clear error, but the legal standards it applies and the application of those standards to the facts are reviewed de novo." *Reddam v. Comm'r*, 755 F.3d 1051, 1059 (9th Cir. 2014). Based on the facts as found by the Tax Court and reviewed under the applicable standard, I find it clear that the sale to Berlinetta did not have "any economic substance other than the creation of tax benefits." *Id.* (internal quotation mark omitted).

In *Owens v. Comm'r*, 568 F.2d 1233 (6th Cir. 1977), the Sixth Circuit considered a similar sale of a corporation whose only asset was cash and noted that "[w]hen one purports to sell cash in corporate solution the burden is surely particularly severe on the seller to show that the only purpose served is not tax avoidance." *Id.* at 1239. The court explained that "[t]he reason for such a heavy burden when the corporation owns just cash is that the corporation has already been effectively liquidated from a corporate law viewpoint,

and such a liquidation is a step in the process of winding up a corporation's affairs." *Id.*

The Sixth Circuit examined whether the sale of stock was in fact the sale of the "equity of a business," distinguishing between sale of a going concern and sale of corporate assets. *Id.* ("When a stockholder sells his stock, he is selling his proprietary interest in a going concern and not an interest in the corporate assets."). The court concluded that because the corporation had no ongoing business activity, the corporation "was a lifeless shell at the time of the purported sale of stock." *Id.* ("A corporation that is not carrying on business activity can be a ready vehicle for use as 'nothing more than a contrivance' in a scheme of illegitimate tax avoidance." (quoting *Gregory v. Helvering*, 293 U.S. 465, 469 (1935))).

The Sixth Circuit also examined the financing for the stock purchase. It noted that the purchasers, who took out a loan to buy the stock, had two alternatives to repay the loan: "they could have withdrawn the cash from the bank account, thereby reducing [the corporation] to an empty corporate shell, and pay the loan immediately," or "they could have earned profit with [the corporation's] business, and paid the loan over a period of time." *Id.* at 1240. If the purchasers had planned to operate the corporation as a going concern, "[t]he risks of such a business would have led the Bank . . . to require collateral, but . . . the record does not reveal that collateral was required." *Id.* In fact, the purchasers "withdrew all the cash from the [corporation] bank account the same day as the purported sale of stock" in order to repay the loan. *Id.*

The Sixth Circuit held that because "tax liabilities cannot be altered on the basis of parties exchanging the most

fungible commodity of all, cash," the stock sale should not be respected. *Id.*

Many of the same factors considered by the Sixth Circuit in *Owens* are present in this case. Slone Broadcasting was a corporation with no assets other than cash and a built-in gain tax liability of about $15 million that was sold for cash. There is no dispute in this case that Slone Broadcasting had no business operations at the time of the sale to Berlinetta. The financing scheme was very similar to that in *Owens*: One of the conditions of the purchase loan from Rabobank was that it be repaid using Slone Broadcasting's cash, via an irrevocable payment instruction, as soon as Berlinetta acquired Slone. Just as in *Owens*, the purchaser of Slone Broadcasting borrowed the purchase price, and after closing, immediately withdrew money from the corporate bank account in order to repay the purchase loan. While the Tax Court found that "Berlinetta also held at least $18,459,360 of equity at the time of closing" apart from the loan from Rabobank, the only support in the record for this finding is a law firm opinion letter prepared for Slone Broadcasting and written three months after the stock sale. I would conclude that this finding was clearly erroneous. In any event, it is undisputed that Berlinetta did in fact borrow the purchase price from Rabobank and immediately repaid the loan with Slone Broadcasting's cash.

Just as in *Owens*, these undisputed facts are sufficient to draw the legal conclusion that the sale of Slone Broadcasting's stock was in substance a liquidating distribution to Slone Broadcasting's shareholders. Thus, the Slone Broadcasting shareholders are "transferees" under 26 U.S.C. § 6901 as "the shareholder[s] of a dissolved corporation." *See* 26 C.F.R. § 301.6901-1(b). I would

remand to the Tax Court to determine whether the shareholders are substantively liable under Arizona state law.