**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| NORMA L. SLONE, Transferee, *Petitioner-Appellee*, v. COMMISSIONER OF INTERNAL REVENUE, *Respondent-Appellant.* | No. 16-73349 Tax Ct. No. 6629-10 |

| | |
|---|---|
| SLONE FAMILY GST TRUST, UA Dated, August 6, 1998, Transferee, D. Jack Roberts, Trustee, *Petitioner-Appellee*, v. COMMISSIONER OF INTERNAL REVENUE, *Respondent-Appellant.* | No. 16-73351 Tax Ct. No. 6630-10 |

JAMES C. SLONE, Transferee,
            *Petitioner-Appellee*,

            v.

COMMISSIONER OF INTERNAL
REVENUE,
            *Respondent-Appellant.*

No. 16-73354

Tax Ct.
No. 6631-10

SLONE REVOCABLE TRUST, UA
Dated September 20, 1994,
Transferee, James C. Slone and
Norma L. Slone, Trustees,
            *Petitioner-Appellee*,

            v.

COMMISSIONER OF INTERNAL
REVENUE,
            *Respondent-Appellant.*

No. 16-73356

Tax Ct. No.
6632-10

OPINION

Appeal from a Decision of the
United States Tax Court

Argued and Submitted February 13, 2018
San Francisco, California

Filed July 24, 2018

Before:  Mary M. Schroeder and Paul J. Watford, Circuit Judges, and William K. Sessions III,[*] District Judge.

Opinion by Judge Schroeder

## SUMMARY[**]

### Tax

The panel reversed a decision of the Tax Court, and remanded with instructions to enter judgment in favor of the Commissioner of Internal Revenue, on a petition for redetermination of federal income tax deficiency challenging Petitioners' liability for taxes in connection with an asset and stock sale.

Slone Broadcasting Co. sold its assets to Citadel Broadcasting Co. and its shares to Berlinetta, Inc. The stock sale to Berlinetta involved the payment of funds obtained through a loan, plus the assumption of a tax liability generated by the asset sale. Slone Broadcasting and Berlinetta then merged into a company called Arizona Media Holdings, Inc. After paying off the loan used to buy the stock, Arizona Media had no assets with which to pay the tax liability from the asset sale. The Internal Revenue Service then sent notices of tax liability to Petitioners, the former shareholders of Slone

---

[*] The Honorable William K. Sessions III, United States District Judge for the District of Vermont, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Broadcasting, claiming that they were liable as "transferees" for taxes owed on the asset sale, under 26 U.S.C. § 6901.

In an earlier appeal, this court considered the Tax Court's original ruling in favor of Petitioners, and remanded to the Tax Court because it had not applied the correct test to determine whether Petitioners were transferees under section 6901. On remand, the Tax Court again ruled for Petitioners.

In this appeal, applying Arizona's Uniform Fraudulent Transfer Act, the panel held that the transaction was constructively fraudulent as to the creditor (the IRS) because the debtor (Slone Broadcasting) did not receive a reasonably equivalent value in exchange for the transfer to the shareholders and was left unable to satisfy its tax obligation. The panel explained that the sale to Berlinetta was a cash-for-cash exchange lacking independent economic substance beyond tax avoidance, and that reasonable actors in Petitioners' position would have been on notice that Berlinetta never intended to pay Slone Broadcasting's tax obligation.

Because the transaction lacked independent economic substance apart from tax avoidance, and because Petitioners were liable for the tax obligation under applicable state law, the panel held Petitioners liable for Slone Broadcasting's federal tax obligation as "transferees" under 26 U.S.C. § 6901.

## COUNSEL

Arthur T. Catterall (argued), Francesca Ugolini, and Gilbert S. Rothenberg, Attorneys; David A. Hubbert, Acting

Assistant Attorney General; Tax Division, United States Department of Justice, Washington, D.C.; for Respondent-Appellant.

Stephen E. Silver (argued) and Jason M. Silver, Silver Law PLC, Scottsdale, Arizona, for Petitioners-Appellees.

**OPINION**

SCHROEDER, Circuit Judge:

These consolidated appeals by the Commissioner of Internal Revenue from the Tax Court involve the Commissioner's efforts to hold Petitioners, the former shareholders of a close corporation, Slone Broadcasting Co. ("Slone Broadcasting"), responsible for taxes owed on the proceeds of its 2001 sale of assets to another broadcasting company, Citadel Broadcasting Co. ("Citadel"), for $45 million. This generated an estimated tax liability of $15.3 million. This is the second time the Commissioner has appealed to this Court. The background is described in more detail in our first opinion, *Slone v. C.I.R.*, 810 F.3d 599 (9th Cir. 2015). We only summarize here.

The Petitioners followed up the asset sale to Citadel by selling Slone Broadcasting's stock to another company, Berlinetta, Inc. ("Berlinetta"), an affiliate of Fortrend International, LLC ("Fortrend"). *See id.* at 602. Berlinetta assumed Slone Broadcasting's income tax liability. *Id.* Berlinetta, using borrowed funds, paid the Petitioners an amount representing the net value of the company after the asset sale plus a premium representing almost two-thirds of the amount of Slone Broadcasting's tax liability. The

Petitioners thus received two-thirds of the amount Slone Broadcasting should have paid in taxes after the asset sale.

Berlinetta and Slone Broadcasting then merged into a new company called Arizona Media Holdings, Inc. ("Arizona Media"), *id.* at 603, purportedly engaged in the business of debt collection. After the newly formed entity repaid the loan Berlinetta had used to purchase Petitioners' stock, however, the new company had no assets with which to pay the taxes due from the original asset sale. So the Commissioner went after the Petitioners as the ultimate transferees of the proceeds of the original sale of assets. The Commissioner seeks to establish that the Petitioners are liable for the Slone Broadcasting tax liability that Berlinetta assumed but never paid.

In the first appeal we considered the Tax Court's original ruling in favor of the Petitioners. We remanded to the Tax Court because it had not applied the correct test to determine whether the Petitioners were "transferees" under 26 U.S.C. § 6901. *See Slone*, 810 F.3d at 606–08. Under that section, the Commissioner can, under certain circumstances, assess tax liability against a taxpayer who is "'the transferee of assets of a taxpayer who owes income tax,'" and such liability is assessed as if the transferee were the original taxpayer. *Id.* at 604 (quoting *Salus Mundi Found. v. Comm'r*, 776 F.3d 1010, 1017 (9th Cir. 2014)). We held that the Petitioners would be subject to transferee liability if two conditions were satisfied: first, the relevant objective and subjective factors must show that under federal law the transaction with Berlinetta lacked independent economic substance apart from tax avoidance; and second, we explained Petitioners must be liable for the tax obligation under applicable state law. *See id.* at 604–08. The Tax Court

erred in its first decision in failing to look behind the form of this transaction to determine its economic substance under federal law. In the first appeal, we emphasized that both federal and state law issues must be satisfied to create liability. *See id.* at 608.

On remand to the Tax Court, the Commissioner argued that the Petitioners received, in substance, a liquidating distribution from Slone Broadcasting, and that the form of the stock sale to Berlinetta should be disregarded. Petitioners emphasized that the proceeds they received came from Berlinetta, not Slone Broadcasting. The Tax Court chose to address only state law issues. It correctly looked to the Uniform Fraudulent Transfer Act ("UFTA") that Arizona has adopted, but the Tax Court concluded it could disregard the form of the stock sale to Berlinetta and look to the entire transactional scheme only if Petitioners knew that the scheme was intended to avoid taxes. The Tax Court concluded Petitioners had no such knowledge and ruled once again for the Petitioners.

On appeal the Commissioner argues that the Tax Court misinterpreted the Arizona statute to require actual or constructive knowledge, but that even if the statute requires such a showing, the Commissioner satisfied its burden. We do not reach the issue of statutory interpretation because the record contains ample evidence that Petitioners were at the very least on constructive notice that the entire scheme had no purpose other than tax avoidance.

This record, as described in our earlier opinion and in the Tax Court's opinion below, shows that the purpose of Petitioners' transaction with Berlinetta was tax avoidance, and that reasonable actors in Petitioners' position would have

been on notice that Berlinetta never intended to pay Slone Broadcasting's tax obligation. It is not disputed that Slone Broadcasting, following its asset sale to Citadel, was not engaged in any business activities. It held only the cash proceeds of the sale and receivables, plus the accompanying $15 million tax liability. When Petitioners sold the stock to Berlinetta, along with that tax liability, Petitioners received, in substance, an ostensibly tax-free liquidating distribution from Slone Broadcasting. There was no legitimate economic purpose other than to avoid paying the taxes that would normally accompany a liquidating asset sale and distribution to shareholders. *See Diebold Found., Inc. v. Comm'r*, 736 F.3d 172, 175 (2d Cir. 2013).

The financing transactions further demonstrate that the deal was only about tax avoidance. Berlinetta borrowed the funds to make the purchase. After the merger with Slone Broadcasting into Arizona Media, that entity, had it been intended to be a legitimate business enterprise, could have repaid the loan over time and retained sufficient capital to sustain its purported debt collection enterprise and cover the tax obligation. Instead, the financing was structured so that, after the merger, Slone Broadcasting's significant cash holdings went immediately out the door to repay the loan Berlinetta used to finance its purchase of the Slone Broadcasting stock and tax liability. In the first appeal, Judge Noonan observed that this case bears a striking resemblance to *Owens v. Commissioner*, 568 F.2d 1233 (6th Cir. 1977), in which a similar cash-for-cash purchase was held to be a liquidating distribution to the shareholder. *See Slone*, 810 F.3d at 608–09 (Noonan, J., concurring in part and dissenting in part). The analogy is apt.

While the majority of the panel in the first appeal

declined to reach the issue of economic substance under federal law, it is appropriate to do so now. The Petitioners' sale to Berlinetta was a cash-for-cash exchange lacking independent economic substance beyond tax avoidance. *See Feldman v. C.I.R.*, 779 F.3d 448, 455–57 (7th Cir. 2015). Indeed Petitioners' own advisors expressed surprise over this transaction; one of Petitioners' lawyers testified that in his nearly twenty years of private practice he "had never seen a transaction like this."

We therefore turn to whether, under Arizona law, the Petitioners are liable to the government for Slone Broadcasting/Arizona Media's tax liability. *See Slone*, 810 F.3d at 604–05. As the Tax Court recognized, this question must be resolved under Arizona's Uniform Fraudulent Transfer Act. The Commissioner argues in this appeal that Petitioners are liable under that statute's constructive fraud provisions. *See* Ariz. Rev. Stat. §§ 44-1004(A)(2), 44-1005. The Arizona UFTA's constructive fraud provisions protect a creditor in the event a debtor engages in a transfer of assets that leaves the debtor insolvent, i.e., unable to pay its outstanding obligations to the creditor. *See Hullett v. Cousin*, 63 P.3d 1029, 1032–33 (Ariz. 2003). Specifically, the UFTA provides that a transaction is constructively fraudulent as to a creditor (here, the IRS), if the debtor (here, Slone Broadcasting), did not "receiv[e] a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

> (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(b) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."

Ariz. Rev. Stat. § 44-1004(A)(2); *see id.* § 44-1005 (debtor's transfer fraudulent as to creditor when "the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation").

Our review of the record confirms that Petitioners' sale of Slone Broadcasting stock to Berlinetta, and Berlinetta's assumption of Slone Broadcasting's tax liability, was, in substance, a liquidating distribution to Petitioners, which left neither Slone Broadcasting nor Berlinetta able to satisfy Slone Broadcasting's $15.3 million tax liability. Such a transfer, in which the debtor, Slone Broadcasting, received no reasonably equivalent value in return for its transfer to its shareholders and was left unable to satisfy its tax obligation, falls squarely within the constructive fraud provisions of the Arizona UFTA.

The Tax Court held that Petitioners had no actual or constructive knowledge of Berlinetta's tax avoidance scheme, and thus concluded it had to consider merely the rigid form of the deal. According to the Tax Court, because the Petitioners received their money from Berlinetta, and not formally from Slone Broadcasting/Arizona Media, there was no transfer from the "debtor" for purposes of sections 44-1004(A)(2) and 44-1005 of the UFTA.

In this appeal, the Commissioner contends that we should look to the substance of the transactional scheme to see that Berlinetta was merely the entity through which Slone Broadcasting passed its liquidating distribution to Petitioners. We agree, because the Tax Court, without adequate explanation, viewed itself bound by the form of the transactions rather than looking to their substance. Its concern was apparently that the Commissioner had not established the requisite knowledge on the part of the participants in the scheme to render Petitioners accountable. This, however, is belied by the record.

Reasonable actors in Petitioners' position would have been on notice that Berlinetta intended to avoid paying Slone Broadcasting's tax obligation. Berlinetta communicated its intention to eliminate that tax obligation, and Slone's leaders and advisors, despite their suspicions surrounding the transaction, asked no pertinent questions. In Berlinetta's earliest solicitations to Slone Broadcasting, Berlinetta marketed its ability to pay the shareholders a premium on account of its ability to eliminate the company's tax liabilities. Berlinetta's affiliate company, Fortrend, wrote in a letter to Jack Roberts, Petitioners' longtime accountant, that Fortrend could pay a premium purchase price because of its ability to "resolve liabilities at the corporate level." This proposal raised justified suspicions in Slone Broadcasting's leadership. Mr. Slone, the company's president, testified that upon learning that an entity wanted to purchase Sloan Broadcasting, after it had already been effectively sold to Citadel, he asked Jack Roberts, "can that be done?" Unsure, Roberts replied, "well, I'm going to find out."

That Berlinetta provided little information regarding how it would eliminate Slone Broadcasting's tax liability, coupled

with the structuring of the transactions, provided indications that would have been hard to miss. Slone Broadcasting's advisors understood that the transaction made sense from Berlinetta's perspective only if Slone Broadcasting's tax liability were eliminated. This deal was, after all, an uneven cash-for-cash exchange in which Berlinetta paid Petitioners most of what Slone Broadcasting should have paid in taxes. Yet Petitioners' retained counsel testified that when he and Jack Roberts asked for details, Berlinetta told them "it was proprietary, it was a secret, and it was theirs, and we weren't going to be a party to it, and I said fine." And in a lengthy memo retained counsel prepared in November of 2001 analyzing the subject of potential transferee liability, counsel wrote that Berlinetta would distribute almost all of Slone Broadcasting's cash to repay the loan used to finance the deal. The memo never analyzed how Berlinetta could legally offset Slone Broadcasting's taxable gain from the asset sale. The memo merely concluded that Petitioners would not be liable as transferees of the proceeds of Slone Broascasting's asset sale if the Commissioner successfully challenged the entity's attempt to offset the tax liability.

The Tax Court misinterpreted Petitioners' suspicions and Berlinetta's reassurances to mean Petitioners lacked actual or constructive knowledge of the tax avoidance purpose of the scheme. This record establishes that the Petitioners were, at the very least, on constructive notice of such a purpose. In reaching a contrary conclusion, the Tax Court confused actual and constructive notice, in effect allowing Petitioners to shield themselves through "the willful blindness the constructive knowledge test was designed to root out." *Diebold*, 736 F.3d at 189–90; *see Salus Mundi*, 776 F.3d at 1020. It is clear that Petitioners' stock sale to Berlinetta, in which Berlinetta assumed Slone Broadcasting's tax liability,

and Berlinetta paid Petitioners an amount representing the net value of the company after the asset sale and most of the amount that should have been paid in taxes on that asset sale, operated in substance as a liquidating distribution by Slone Broadcasting to Petitioners, but in a form that was designed to avoid tax liability. Slone Broadcasting's distribution to Petitioners was thus a constructively fraudulent transfer under the Arizona UFTA. Petitioners are liable to the government for Slone Broadcasting's federal tax obligation as "transferees" under 26 U.S.C. § 6901.

**REVERSED and REMANDED for entry of judgment in favor of the Commissioner.**