**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FEB 3 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LINDSEY JONES, | No.    20-70013 |
| Petitioner-Appellant, | Tax Ct. No.  32168-15 |
| v. | |
| COMMISSIONER OF INTERNAL REVENUE, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from a Decision of the
United States Tax Court

Argued and Submitted January 18, 2022
Honolulu, Hawaii

Before:  O'SCANNLAIN, MILLER, and LEE, Circuit Judges.

Lindsey Jones appeals from the tax court's decision denying relief from joint

and several liability for underpayments of her 2009 and 2010 income tax. We have

jurisdiction under 26 U.S.C. § 7482(a)(1), and we affirm.

1.    The tax court did not err by concluding that Jones tacitly consented to

the filing of the 2010 joint return. *See Slone v. Commissioner*, 810 F.3d 599, 604

---

\*    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

(9th Cir. 2015) ("We review a tax court's factual determinations for clear error and its application of legal standards de novo."). A joint tax return signed by one spouse on behalf of the other is valid so long as the nonsigning spouse tacitly consented to filing the joint return. *See Hennen v. Commissioner*, 35 T.C. 747, 748–49 (1961); 26 U.S.C. § 6064. The key question is whether both spouses intended *at the time of filing* to file a joint return. *See Federbush v. Commissioner*, 34 T.C. 740, 757–58 (1960).

The tax court correctly articulated the governing legal standard, and it found that Jones tacitly consented to filing the 2010 joint tax return because she had provided her then-husband with her W-2s and other tax information; she failed to file a separate income tax return; and she later allowed her spouse in a subsequent marriage to sign her name to their joint tax returns. Although the last of those facts does not seem to us to be especially probative, and although Jones had remarried by the time her ex-husband signed her name on the 2010 return, those considerations are insufficient to establish that the tax court clearly erred. The 2010 joint tax return is therefore valid.

2.     The tax court did not abuse its discretion by denying Jones innocent-spouse relief under 26 U.S.C. § 6015(f) for the 2009 and 2010 underpayments. Section 6015(f) grants the Commissioner discretion to relieve a spouse of joint liability if, considering all of the facts and circumstances, it would be inequitable to

2

hold the requesting spouse liable for the unpaid taxes. Relevant factors include (1) the marital status of the claimant as of the date of the claim; (2) whether the claimant would suffer economic hardship if relief is not granted; (3) whether the claimant knew or had reason to know that the non-claiming spouse could not pay the tax liability; (4) whether the claimant has a legal obligation to pay the outstanding tax liability; (5) whether the claimant significantly benefited from the underpayment; (6) the claimant's tax compliance record in subsequent years; and (7) the claimant's physical and mental health. Rev. Proc. 2013–34 § 4.03(2).

The tax court held that Jones's history of noncompliance with income tax laws and knowledge of her ex-husband's financial difficulties outweighed those factors favoring relief—namely, marital status and a lack of benefit from the underpayments. The remaining factors were neutral. On appeal, Jones argues that the knowledge factor should not have militated against relief and the legal-obligation, significant-benefit, and health factors should have weighed in her favor. But the tax court did not clearly err in its factual findings, nor did it abuse its discretion in concluding that the factors, on balance, did not favor granting Jones relief.

First, the tax court's finding that Jones had reason to know that her ex-husband could not pay the 2009 and 2010 tax liability is supported by the record. Jones knew that she and her ex-husband needed to use proceeds from selling their

home to satisfy their 2008 tax liability, and she acknowledged at trial that money was tight at the time of their separation. The tax court reasoned that Jones could not "turn a blind eye to the couple's tax filings," and that given the circumstances she should have "taken some steps to assure herself . . . that the tax liabilities for the years at issue would be paid." That was not error. And although spousal abuse that prevents the claimant from being able to question tax payments "for fear of the nonrequesting spouse's retaliation" would weigh in favor of relief, the tax court did not clearly err in finding that Jones had not shown abuse of the type or degree that would be recognized by the tax law. Rev. Proc. 2013–34 § 4.03(2)(c)(i)(A). Second, the marital settlement agreement did not absolve Jones of liability for the joint taxes. Third, neither spouse received a significant benefit from the unpaid tax liabilities—that is, "any benefit in excess of normal support," such as "owning luxury assets and taking expensive vacations." Rev. Proc. 2013-34 § 4.03(e). Instead, the money was lost to the family's unsuccessful business. And, regardless, the tax court noted that "[t]he significant benefit factor *favors relief* or at worst is neutral." Fourth, there is no evidence that Jones was in poor health during the relevant period. The tax court therefore did not clearly err in finding those factors to be neutral. And given Jones's poor record of tax compliance and the absence of any factor weighing strongly in her favor, the tax court did not abuse its discretion by concluding that equitable relief was not warranted.

**AFFIRMED.**