T.C. Memo. 2017-146

UNITED STATES TAX COURT

ALAN BROOKES AND CAROL BROOKES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30647-14.                          Filed July 26, 2017.

<u>Mansoor H. Ansari</u>, for petitioners.

<u>Elizabeth S. McBrearty</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, <u>Judge</u>:  Respondent determined deficiencies in petitioners' Federal
income tax and section 6662(a) accuracy-related penalties, as follows:[1]

_____

[1]All section references are to the Internal Revenue Code in effect for the
years in issue, and all Rule references are to the Tax Court Rules of Practice and
Procedure, unless otherwise indicated.

[*2]

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2010 | $36,503 | $7,300.60 |
| 2011 | 39,823 | 7,964.60 |
| 2012 | 45,376 | 9,075.20 |

After concessions,[2] the issues remaining for decision are whether: (1) petitioners'

S corporation is entitled to deduct certain trade or business expenses for 2010,

2011, and 2012 and (2) petitioners are liable for section 6662(a) accuracy-related

penalties for those years.

_____

[2]Respondent determined in the notice of deficiency that payments to petitioners from Brookes Financial Services, Inc. (Brookes Financial), totaling $106,000 in 2010, $99,000 in 2011, and $101,000 in 2012 were wages to petitioners. (Brookes Financial is petitioners' wholly owned S corporation.) Respondent allowed Brookes Financial corresponding deductions for wages paid in 2010, 2011, and 2012. Additionally, the notice determined that amounts deducted by Brookes Financial for insurance expenses in 2010, 2011, and 2012 were fringe benefits to petitioners; the notice of deficiency included these amounts in petitioners' wage income. Adding these fringe benefits to the aforementioned payments, the total positive adjustments to wages for 2010, 2011, and 2012 were $120,193, $111,234, and $111,297, respectively. Petitioners did not contest these adjustments at trial or in their opening or answering briefs. Petitioners did not present any evidence relating to these adjustments. Consequently, the Court finds that petitioners have conceded all issues relating to these wage adjustments for 2010, 2011, and 2012 subject to the findings of this opinion.

**[*3]**                    FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The first stipulation of facts and the first supplemental stipulation of facts are incorporated herein by this reference.  Petitioners filed Forms 1040, U.S. Individual Income Tax Return, for 2010, 2011, and 2012 as married individuals filing jointly.  Petitioners did not report any wage income on their Forms 1040 for those years.

Throughout 2010, 2011, and 2012 petitioners each owned half of Brookes Financial, an S corporation incorporated since 1994.  Brookes Financial filed Forms 1120S, U.S. Income Tax Return for an S Corporation, for 2010, 2011, and 2012.

Brookes Financial carried on two lines of business during 2010, 2011, and 2012:  Mr. Brookes' business and financial consulting activities, which included tax preparation services, and Mrs. Brookes' art business.[3]  During the years in issue Mr. Brookes provided services to fledgling businesses, including financial and marketing advice and preparation of tax returns for clients.

---

[3]Petitioners testified credibly that they ran both lines of business through Brookes Financial.  Corporate records they provided support their testimony.  Petitioners also claimed to have run a book publishing business of some kind through Brookes Financial, but they have not provided any evidence to substantiate any expenses or other tax items related to a book publishing business.  See infra note 12.

**[*4]**  Mrs. Brookes is an artist.  She holds bachelor's and master's degrees in fine arts and has taught art at several colleges.  Mrs. Brookes designed promotional materials for some of Mr. Brookes' clients.  She also created "mixed media wall sculptures" using sculpting epoxy, paint, and industrial materials, including nails and bolts, ropes, and similar items.  Mrs. Brookes offered these productions for sale at various venues and out of her own studio.

Brookes Financial rented an art studio throughout 2010, 2011, and 2012 which Mrs. Brookes used for her art business.  During the years in issue Mrs. Brookes also displayed some of her art through Viridian Artists, Inc., and Brookes Financial paid the gallery fees--$1,710, $3,055, and $2,180 in 2010, 2011, and 2012, respectively.

Petitioners traveled extensively--both domestically and internationally--in 2010, 2011, and 2012.  Brookes Financial claimed a deduction for travel expenses for each of those years.

Brookes Financial also had a medical reimbursement plan in place that agreed to reimburse up to $5,000 of qualifying medical expenses incurred by employees and their dependents; the plan does not provide any adjustment of the $5,000 amount for inflation.  Mrs. Brookes has severe scoliosis, and she requires massage therapy as part of her treatment.  Brookes Financial made payments to a

[*5] massage therapist totaling $3,910.33 in 2010 and exceeding $5,000 in both 2011 and 2012.

On October 1, 2014, respondent issued a notice of deficiency to petitioners for 2010, 2011, and 2012, disallowing deductions for certain trade or business expenses claimed by Brookes Financial and determining that petitioners were liable for accuracy-related penalties for the years in issue.  On December 24, 2014, while residing in Illinois, petitioners timely filed a petition.

OPINION

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Petitioners do not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.

I.    Trade or Business Expenses

Section 162(a) allows the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  An expense is ordinary if it is customary or usual within a particular trade, business, or industry or relates to a transaction "of common or frequent occurrence in the type of business involved."  Deputy v. du Pont, 308 U.S. 488,

**[*6]** 495 (1940).  An expense is necessary if it is appropriate and helpful for the development of the business.  Commissioner v. Heininger, 320 U.S. 467, 471 (1943).  Personal, living, and family expenses are generally not deductible.  Sec. 262(a).

Deductions are a matter of legislative grace; taxpayers bear the burden of substantiating their claimed deductions by keeping and producing records sufficient to enable the Commissioner to determine the correct tax liability.  Sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), (e), Income Tax Regs.

A.     Miscellaneous Expenses

The Court notes that petitioners' exhibits provide little help explaining or supporting their deductions.[4]  Petitioners provided corporate "Profit & Loss

---

[4]The issue in this case is whether petitioners adequately substantiated that the deductions Brookes Financial claimed were for ordinary and necessary expenses paid during the taxable years in issue in connection with Brookes Financial's trades or businesses.  Neither the notice of deficiency nor respondent's answer challenged Brookes Financial's art business under sec. 183 as not for profit.  Respondent confirmed during the pretrial conference that petitioners' deductions were not being challenged under sec. 183 but instead were being challenged under secs. 162 and 262.  The Court did not ask the parties to address sec. 183.  Respondent's briefs did not address sec. 183.  And yet the principal issue addressed by petitioners' counsel in the argument sections of his opening and answering briefs was whether sec. 183 should apply to petitioners' case.  Petitioners provided little meaningful guidance for the resolution of the actual

(continued...)

**[*7]** Statement[s]" for 2010 and 2012, and a "Cash Flow" statement for 2011, but these documents merely list total expenses in various categories. Petitioners also provided itemized lists of expenses for each year, but the itemized lists are generally not supported by receipts or other documentation demonstrating that the expenses were actually paid or that the expenses had a business purpose. The amounts in the itemized lists are generally lower than those appearing on the profit and loss or cashflow statements (and lower than the amounts that appear on Brookes Financial's returns). Numerous discrepancies between the itemized lists, the profit and loss or cashflow statements, and the deductions claimed on Brookes Financial's returns are not explained anywhere in the record. Petitioners also provided credit card statements for personal credit cards, with handwritten notes in the margins indicating that certain expenses were business expenses.[5] Petitioners

---

[4](...continued)
issue in this case--whether petitioners have adequately <u>substantiated</u> the expenses underlying the deductions claimed by Brookes Financial.

[5]The handwritten notes in the margins of the credit card statements are terse: for example, "Bus", "Med", "Art", "Trav, "Auto", and "Promo". Petitioners provided no testimony or other documentation, such as accompanying receipts, to support deductions for the expenses listed on their credit card statements (with one exception--as the Court will discuss below, petitioners provided supporting documentation and testimony relating to credit card purchases of supplies for the art business). The descriptions of credit card purchases on the credit card statements are too vague for the Court to determine whether there was a business

(continued...)

**[*8]** have not provided any meaningful explanation of how all these various documents fit together as substantiation for their deductions. The Court will, nevertheless, review petitioners' poorly organized evidence and proceed to the merits of the case.

After carefully reviewing the entire record, the Court finds that either no or inadequate evidence was provided to substantiate expenses petitioners deducted for 2010, 2011, and 2012 for "Purchases - Cost of Goods Sold",[6] "Bank Charges",[7] "Legal and Professional Fees",[8] "Maintenance", "Net Operating Loss", "Office

---

[5](...continued)
purpose for any of the credit card purchases. For example, expense descriptions include "Walgreens", "Shell Oil", and "AT&T Data"--any of these expenses could have been personal to petitioners. Because no other evidence corroborates (or even explains) these expenses, the Court finds that no deductions are allowed for expenses listed on their personal credit card statements, other than the deductions the Court allows below for purchases of art supplies.

[6]Respondent contends that the amount of "Purchases - Cost of Goods Sold" disallowed for 2011 consisted of payments for "personal condo assessments" and that the amount of "Purchases - Cost of Goods Sold" disallowed for 2012 consisted of payments to purchase gold bullion or was entirely unsubstantiated. Petitioners did not respond to these arguments.

[7]Respondent determined that the charges disallowed either were unsubstantiated or were for a personal line of credit. Petitioners did not argue otherwise.

[8]Respondent determined that "Legal and Professional Fees" consisted of "investment fees" and a payment to petitioners' condo association. Petitioners did

(continued...)

**[\*9]** Expenses",[9] "Shareholder Distribution K-1", "Organizational Expenses", "Reimbursed Expenses", "Storage", "Telephone", and "Utilities",[10] beyond what respondent allowed. Therefore the Court sustains respondent's determinations with regard to these deductions.

The Court may estimate the amounts of certain deductible expenses under the so-called Cohan rule. See Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930); see also Lerch v. Commissioner, 877 F.2d 624 (7th Cir. 1989), aff'g T.C. Memo. 1987-295. While it is true that "a court should allow the taxpayer some deductions if the taxpayer proves he is entitled to the deduction but cannot establish the full amount claimed", Edelson v. Commissioner, 829 F.2d 828, 831 (9th Cir. 1987), aff'g T.C. Memo. 1986-223, "the Cohan rule does not 'require that

_____

[8](...continued)
not respond to this argument.

[9]The Court will recharacterize a portion of the reported office expenses for 2011 as "Fees", which will be discussed infra p. 18. The disallowance of the deductions for the remaining office expenses is sustained.

[10]Respondent disallowed the deductions claimed for telephone and utilities expenses because some of them appear to be personal expenses, and petitioners failed to provide any information regarding the allocation of these expenses between business and personal. Because petitioners have likewise failed to provide the Court with any evidence regarding allocation of these expenses between business and personal, the Court sustains respondent's determination regarding the deductions for telephone and utilities expenses.

**[*10]** such latitude be employed'", <u>Norgaard v. Commissioner</u>, 939 F.2d 874, 879 (9th Cir. 1991) (quoting <u>Williams v. United States</u>, 245 F.2d 559, 560 (5th Cir. 1957)), <u>aff'g in part, rev'g in part</u> T.C. Memo. 1989-390.

"[T]o qualify for the estimation treatment under <u>Cohan</u>, the taxpayer must establish that he is entitled to some deduction." <u>Id.</u> (citing <u>Edelson v. Commissioner</u>, 829 F.2d at 831). As <u>Cohan v. Commissioner</u>, 39 F.2d at 543-544, puts it: "Absolute certainty in such matters is usually impossible and is not necessary", but a court "should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making."

The Court has sustained respondent's determination with regard to these deductions because petitioners have failed to offer any evidence that certain expenses were in fact paid and because petitioners' lack of receipts, confusing and inconsistent accounting techniques, and vague testimony leave the Court with no reasonable means of differentiating or estimating which of the reported expenses Brookes Financial paid as ordinary and necessary business expenses. After a thorough review of the record, the Court concludes that there is no basis for allowing an estimated amount of the aforementioned deductions in addition to the amounts respondent already allowed.

[*11] B.    Expenses Subject to Section 274(d)

Section 274(d) imposes more rigorous substantiation requirements for certain expenses, including those pertaining to travel, meals and entertainment, and passenger automobiles. Petitioners' "Travel", "Meals and entertainment", "Auto", and "Repairs" expenses are all subject to the heightened substantiation requirements of section 274(d).[11]

To satisfy the requirements of section 274(d), the taxpayer must prove with specificity the amount, time, place, and business purpose of the expense; for entertainment expenses, the business relationship of the person or persons entertained must also be proved. Sec. 1.274-5T(b)(2) and (3), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46015 (Nov. 6, 1985). The taxpayer also generally must maintain adequate records or documentary evidence corroborating the taxpayer's own statement which, in combination, is sufficient to establish each element of an expenditure or use. Id. para. (c), 50 Fed. Reg. 46016. Adequate records generally consist of an account book, a diary, a log, a statement of

---

[11]Brookes Financial claimed a deduction of $1,621 for "Repairs" for 2011. As respondent points out, there is an expense of $1,620.95 listed in Brookes Financial's 2011 credit card expense report, which is labeled "Auto". The Court has reviewed the cashflow, credit card expense, and register reports petitioners provided for 2011; there is no other expense in that amount. The Court concludes that the "Repairs" expense was a passenger automobile expense.

[*12] expense, trip sheets, or a similar record made at or near the time of the expenditure or use, along with supporting documentary evidence. Id. para. (c)(2). A taxpayer lacking a contemporaneous log is generally expected to maintain a record created as near in time as possible to the particular expenditure or business use (including the elements outlined above), supported by corroborative documentary evidence that carries with it a high degree of probative value. Id. para. (c)(1). Expenses subject to section 274(d) must be substantiated; they cannot be estimated. See Sanford v. Commissioner, 50 T.C. 823, 828 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969).

### 1. Deduction for Travel Expenses

To deduct travel expenses, a taxpayer must substantiate with adequate records or by sufficient evidence corroborating his own statement: (1) the "[a]mount of each separate expenditure for traveling away from home * * * except that the daily cost of the traveler's own breakfast, lunch, and dinner and of expenditures incidental to such travel may be aggregated, if set forth in reasonable categories, such as for meals, for gasoline and oil, and for taxi fares"; (2) "[d]ates of departure and return for each trip away from home, and number of days away from home spent on business"; (3) "[d]estinations or locality of travel, described by name of city or town or other similar designation"; and (4) the "[b]usiness

**[*13]** reason for travel or nature of the business benefit derived or expected to be derived as a result of travel". Sec. 274(d); sec. 1.274-5T(b)(2), (c)(1), Temporary Income Tax Regs., <u>supra</u>.

Petitioners have utterly failed to substantiate their deductions for travel expenses.[12] Petitioners did not provide contemporaneous or near contemporaneous logs for any of their travel, nor did they articulate with specificity the business reasons for each of their travel expenses. Mr. Brookes

---

[12]Petitioners claim to have taken three or four business trips in each year in issue. Mr. Brookes testified that they traveled each year to their "Corporate Annual Meeting" at Wisconsin Dells to discuss for a week or more "how the past year went"and "how the future events are" and to elect corporate officers. Petitioners provided "Minutes of Annual Meeting" for each of the years in issue, but the minutes merely list a single date and time for the meeting (April 20 at 1 p.m. in all three years), with no additional detail other than notes that (1) Mr. and Mrs. Brookes were elected as officers of the corporation and (2) Brookes Financial would continue to rent an art studio (in 2012 they also resolved to find a new office space to rent). The Court finds that Mr. Brookes' testimony with respect to the Wisconsin Dells trips and the "Minutes of Annual Meeting" documents is not credible because the minutes list a single date and time and only two items of business even though the meeting supposedly went on for several days.

Petitioners also claim to have traveled to New York City for the Annual Meeting of Viridian Artists, Inc. (an art gallery through which some of Mrs. Brookes' art was displayed), in each of the years in issue. Petitioners also claim to have traveled to Hawaii in 2010 to (1) help a client establish an advertising business, (2) do research related to Mrs. Brookes' art business, and (3) research a travel book on which Mr. Brookes was working. Petitioners claim to have made similar art and book research trips to Panama in 2011 and to Southeast Asia in 2012. Finally, they claim to have made trips to Santa Fe, New Mexico, and San Francisco, California, for the purpose of displaying and selling Mrs. Brookes' artwork, though the record does not reflect any art sales related to these trips.

**[\*14]** testified in a vague and general way that some amount of business-related activity occurred on each of the various trips he and his wife took together, but he admitted, for example, that a principal purpose of his annual trip to the Wisconsin Dells was to "rest" and "unwind" after tax season.

Petitioners submitted a "Travel Log" for each year in issue, but these logs are wholly insufficient to substantiate petitioners' travel expenses. The logs are not contemporaneous and do not detail amounts of separate expenditures or even set forth expenses in appropriate categories. The dates of departure and return are not clearly set out, and there is no differentiation of business from personal expenses, even though some of the expenses are clearly personal. Consequently, the Court sustains respondent's determination to disallow the deductions for travel expenses.

### 2. Deduction for "Meals and Expenses"

The Court has reviewed the entire record and has found no evidence substantiating the deduction for "Meals and Expenses" claimed for 2011. Consequently, the Court finds that this deduction was properly disallowed.

### 3 . Deductions Related to a Passenger Automobile

To support a deduction for expenses related to the use of a passenger automobile, a taxpayer must substantiate with adequate records or by sufficient

[*15] evidence corroborating his own statement: (1) the "amount of each separate expenditure" with respect to the passenger automobile; (2) the "amount of each business/investment use * * * based on the appropriate measure (i.e., mileage for automobiles * * * ), and the total use of the * * * [passenger automobile] for the taxable period"; (3) the "[d]ate of the expenditure or use" with respect to the passenger automobile; and (4) the "business purpose for an expenditure or use" with respect to the passenger automobile. Secs. 274(d), 280F(d)(4); sec. 1.274-5T(b)(6) and (c)(1), Temporary Income Tax Regs., supra.

Alternatively, a taxpayer may calculate his deductible passenger automobile expenses by multiplying his business miles by the standard mileage rate for the year and then adding allowable tolls and parking fees. Under this alternate method, however, the taxpayer is not relieved of the requirement to substantiate the amount of each business use (i.e., the business mileage), or the time and business purpose of each use. Sec. 1.274-5(j)(2), Income Tax Regs. Consequently, substantiation of miles and business purpose is a prerequisite to claiming a deduction for mileage whether petitioners meant to claim their actual automobile expenses or meant to use the alternative standard mileage rate method for 2012.

**[\*16]**  Petitioners provided no evidence to substantiate business purpose or miles driven.  Consequently, they have failed to substantiate their deductions for "Auto" and "Repairs".[13]

### C.    Deductions Related to the Art Business

Respondent disallowed all or some of the deductions claimed for "Advertising", "Rents", "Fees", and "Supplies" expenses due to his determination that the art business was not run through Brookes Financial and that, therefore, it was inappropriate for Brookes Financial to claim deductions for that line of business.  The Court has found, however, that the art business was run through Brookes Financial.  Consequently, the aforementioned deductions will be allowed in the following amounts, as explained more fully below:

| Item | 2010 | 2011 | 2012 |
|------|------|------|------|
| Advertising | $2,141 | -0- | $6,411 |
| Rents | 27,579 | $30,053 | 30,961 |
| Fees | 1,710 | 3,055 | 2,180 |
| Supplies | 5,295 | 10,000 | 9,581 |

Respondent allowed deductions for advertising expenses related to Mr. Brookes' financial services business of $2,141 and $5,286 for 2010 and 2012,

---

[13]It is not entirely clear from the record, but it also appears that Brookes Financial improperly claimed deductions for both actual expenses and standard mileage rate expenses.

[*17] respectively. Petitioners have not met their burden of proof to support any additional deduction for 2010 for advertising expenses related to the art business because there was too little evidence to support a business purpose for those expenses. Petitioners provided several 2010 receipts labeled "Promo" and a credit card statement for 2010, some entries of which have also been labeled "Promo". But the descriptions of what was purchased are too vague and general for the Court to determine whether these purchases might have been used in the art business. On the other hand, petitioners have met their burden to substantiate the full $6,411 deduction they claimed for advertising for 2012. Petitioners provided receipts showing information sufficient to determine the date of purchase, amount paid, and business purpose for the expenses underlying the advertising deduction they claimed for 2012.

Respondent allowed deductions for rent paid for the office Mr. Brookes used for his financial services business of $21,279, $23,753, and $24,661 for 2010, 2011, and 2012, respectively. The documentation provided to substantiate rent paid for the art studio is inconsistent, but after reviewing petitioners' testimony as a whole in conjunction with the documents provided, the Court is satisfied that Brookes Financial did rent an art studio throughout 2010, 2011, and 2012. Petitioners failed to properly substantiate rent paid in that they did not

**[\*18]** provide adequate proof of payment, but it is clear from the record that Brookes Financial paid rent of at least $525 per month throughout 2010, 2011, and 2012. Therefore, the Court will allow added deductions of $6,300 per year for estimated rent paid, for total "Rents" deductions of $27,579, $30,053, and $30,961 for 2010, 2011, and 2012, respectively. See Cohan v. Commissioner, 39 F.2d 540.

During the years in issue Mrs. Brookes displayed some of her art through Viridian Artists, Inc., and Brookes Financial paid gallery fees of $1,710, $3,055, and $2,180 in 2010, 2011, and 2012, respectively. The Court allows deductions in these amounts.[14]

Brookes Financial claimed deductions for supplies used in the financial and art businesses. Respondent allowed deductions of $2,295 for 2010, zero for 2011, and $2,581 for 2012 for supplies related to the financial business. The Court has carefully reviewed the receipts petitioners provided that relate to the art business. Several receipts are illegible or list a date of payment outside of the years in issue; several merely show an unpaid balance, rather than an amount paid. Some receipts do not adequately describe what was purchased. The Court is satisfied, however, that petitioners have provided sufficient information for the Court to estimate art

---

[14]Brookes Financial reported these fees for 2011 under the heading "Office Expenses". The Court now recharacterizes these expenses as fees for the sake of consistency across all three years in issue. See supra note 9.

[*19] supplies expenses in addition to what respondent allowed of at least $3,000, $10,000, and $7,000 for 2010, 2011, and 2012, respectively. Altogether, therefore, the Court allows total supplies deductions of $5,295 for 2010, $10,000 for 2011, and $9,581 for 2012.

D. Deductions Related to Health Expenses

Brookes Financial claimed deductions for "Cost of Labor - Cost of Goods Sold" and for "Benefits". Respondent disallowed portions of the deductions for "Cost of Labor" and all of the deductions for "Benefits" for lack of substantiation or because both deductions appear to have been for Brookes Financial's reimbursement of various personal medical expenses. The amounts claimed by Brookes Financial, as well as the amounts respondent has allowed, are:

| | Cost of labor | | Benefits | |
| Year | Claimed | Allowed | Claimed | Allowed |
| 2010 | $29,584 | $22,501 | $12,720 | -0- |
| 2011 | 42,212 | 20,493 | 9,466 | -0- |
| 2012 | 40,452 | 18,694 | 38,737 | -0- |

Petitioners' only argument against these adjustments is that Brookes Financial is entitled to deduct amounts paid for massage therapy for Mrs. Brookes. Brookes Financial had a medical reimbursement plan in place under which it agreed to reimburse up to $5,000 of qualifying medical expenses incurred by

[*20] employees and dependents of employees. Mrs. Brookes has severe scoliosis. Mrs. Brookes testified credibly regarding her scoliosis, and petitioners also provided a note from her doctor describing the treatment recommended for her, which includes deep tissue massage therapy.

Respondent has not challenged the validity of the plan or that Brookes Financial made certain payments in relation to a massage therapist's treatment of Mrs. Brookes. The payments totaled $3,910.33 in 2010 and exceeded $5,000 in both 2011 and 2012. Neither has respondent argued that Brookes Financial paid amounts that were otherwise reimbursed by petitioners' health insurance or that the medical expenses reimbursed did not qualify for reimbursement or deduction as appropriate medical expenses.

The sole issue at trial was whether the $5,000 limitation in the plan should be adjusted for inflation. Because the plan contains no clause providing for adjustments for inflation, no adjustment for inflation is permitted. Therefore, in addition to what respondent has already allowed, Brookes Financial is entitled to deduct $3,910.33 for 2010, $5,000 for 2011, and $5,000 for 2012. Otherwise, respondent's adjustments are sustained because petitioners failed to substantiate any further expenses and also failed to articulate any reason further medical expenses would be deductible by Brookes Financial.

**[\*21]** II.    <u>Accuracy-Related Penalties</u>

Respondent determined that petitioners were liable for accuracy-related penalties for either:  (1) disregard of rules or regulations or (2) substantial understatements of income tax for the years in issue.[15]  Section 6662(a) and (b) imposes an accuracy-related penalty of 20% of the portion of an underpayment attributable to any one of various factors, including "[n]egligence or disregard of rules or regulations" and "any substantial understatement of income tax".  Respondent has the burden of production with respect to the penalties.  <u>See</u> sec. 7491(c).

Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and "'disregard' [of rules or regulations] includes any careless, reckless, or intentional disregard."  Sec. 6662(c).  Negligence is determined by testing a taxpayer's conduct against that of a reasonable, prudent person.  <u>Zmuda v. Commissioner</u>, 731 F.2d 1417, 1422 (9th Cir. 1984), <u>aff'g</u> 79 T.C. 714 (1982).  A taxpayer is required to substantiate expenses underlying claimed deductions by keeping and producing records

---

[15]Respondent's determination of accuracy-related penalties in the notice of deficiency includes the factors "[s]ubstantial valuation misstatement (overstatement)" and "[t]ransaction lacking economic substance" as possible reasons for the penalties, neither of which is in issue here.

[*22] sufficient to enable the Commissioner to determine the correct tax liability. Sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; sec. 1.6001-1(a), (e), Income Tax Regs.

Insofar as the Court has sustained respondent's disallowance of deductions, the Court has done so because petitioners did not produce records sufficient to substantiate their deductions. Respondent has therefore met his burden of production to show that petitioners were negligent and disregarded the applicable rules or regulations.[16]

A penalty under section 6662(a) does not apply to any portion of an underpayment of tax if there was reasonable cause for such portion and the taxpayer acted in good faith with respect to such portion. Sec. 6664(c)(1). Petitioners bear the burden of proving reasonable cause and good faith. See Higbee v. Commissioner, 116 T.C. 438, 449 (2001). Petitioners do not contend--

---

[16]Although only one accuracy-related penalty may be applied to any given portion of an underpayment, see sec. 1.6662-2(c), Income Tax Regs., if computations under Rule 155 show that petitioners have substantially understated their income tax for any year in issue, respondent has also met his burden of production for that factor.

[*23] nor does the record demonstrate--that they had reasonable cause or acted in good faith with respect to the portions of the underpayments sustained above.[17] Therefore, petitioners are liable for accuracy-related penalties for the years in issue.

The Court has considered all of the arguments made by the parties, and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[17]The Court notes that Mr. Brookes prepares tax returns for his clients.  See supra p. 3.